# UNITED STATES *v.* EWING.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF TENNESSEE.

No. 1117. Argued March 12, 13, 1891. — Decided May 11, 1891.

There being a dispute between the appellee, a commissioner of a Circuit Court of the United States, and the appellant, respecting the official fees of the former for services in criminal cases. *Held*,

(1) That the law of the State in which the services are rendered must be looked at in order to determine what are necessary;

(2) That in Tennessee a temporary mittimus may become necessary, and a charge for it should be allowed unless there has been an abuse of discretion in regard to it;

(3) That only one fee can be charged for taking the acknowledgment

of defendants' recognizances, but that one fee can be charged, as
an acknowledgment in such case is necessary;

(4) That charges for drawing complaints and for taking and certifying
depositions to file are proper;

(5) That a charge for "entering returns to process" is unobjectionable;

(6) That a charge for "writing out testimony" is allowable;

(7) That the items for fees for dockets, etc., which were allowed on the
authority of *United States* v. *Wallace*, 116 U. S. 398, decided at
October term, 1885, should have been disallowed, as the right to
make such charges was taken away by the proviso in the deficiency
appropriation act of August 4, 1886, 24 Stat. 274, which, although
a proviso in a annual appropriation bill, operated to amend Rev.
Stat. § 847;

(8) That a commissioner, acting judicially, has the discretion to suspend a
hearing, and that per diem fees for continuances should be
allowed.

THIS action was brought by the appellee, Ewing, in the Dis-
trict Court of the United States for the Eastern District of
Tennessee, for the recovery of certain amounts claimed to be
due him for services as commissioner of the Circuit Court for
that district from January 3, 1887, to April 1, 1889. Perform-
ance of such services was admitted as charged, the district
attorney relying upon the illegality of the charges, and judg-
ment was rendered for the plaintiff for $841.05; from which
this appeal was taken by the United States. The items upon
the allowance of which error was assigned are stated in the
opinion of the court.

*Mr. John C. Chaney* for appellant. *Mr. Assistant Attorney
General Cotton* was with him on the brief.

*Mr. George A. King* for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

The duties of commissioners of the Circuit Court are thus
defined in section 1014 of the Revised Statutes: "For any
crime or offence against the United States, the offender may,
by any justice or judge of the United States, or by any com-
missioner of a Circuit Court to take bail, or by any
justice of the peace or other magistrate of any State where

he may be found, and agreeably to the usual mode of process against offenders in such State, and at the expense of the United States, be arrested and imprisoned, or bailed, as the case may be, for trial before such court of the United States as by law has cognizance of the offence. Copies of the process shall be returned as speedily as may be into the clerk's office of such court, together with the recognizance of the witnesses for their appearance to testify in the case." As this section requires proceedings to be taken " agreeably to the usual mode of process against offenders in such State," it is proper to look at the law of the State in which the services in such case are rendered, to determine what is necessary and proper to be done, and inferentially for what services the commissioner is entitled to payment. *United States* v. *Rundlett*, 2 Curtis, 41; *United States* v. *Horton*, 2 Dill. 94. We have held in *United States* v. *Jones*, 134 U. S. 483, that the approval of the commissioner's account by the Circuit Court of the United States is *prima facie* evidence of its correctness, and in the absence of clear and unequivocal proof of mistake on the part of the court, should be conclusive, although the approval of such court is not a prerequisite to the institution of a suit in a Court of Claims, or, since the act of March 3, 1887, 24 Stat. 505, c. 359, in a Circuit or District Court, for the recovery of the amount claimed. *United States* v. *Knox*, 128 U. S. 230.

We proceed to the consideration of the several items involved in this case:

1. Items 1 and 2 were for temporary mittimuses, disallowed by the comptroller as unnecessary, upon the ground that "the warrant of arrest is sufficient to hold defendant or commit until examination." Rev. Stat. section 847, provides that the commissioner shall have "for issuing any warrant . . . the same compensation as is allowed to clerks for like services;" and section 828 provides that clerks shall have $1 for this service. So far as these items are for mittimuses issued after the examination is concluded, to await the action of the grand jury, no question is made as to the propriety of their allowance; but it is claimed that, pending the examination, it is the duty of the marshal to keep the prisoner in his custody

under his warrant of arrest, and that the mittimus is therefore unnecessary. It appears, however, that under the laws of Tennessee, upon the subject of criminal procedure, § 5877, the magistrate may, "for good cause adjourn the examination from time to time, without the consent of the defendant, not exceeding three days at any one time, and, in such case, if the offence is not bailable, or if the defendant does not give the bail required, *he shall be committed to jail in the meantime;* or if the offence is bailable, the defendant may give bail in such sum as the magistrate directs for his appearance for such further examination." Code Tenn. 1884. As there are no Federal jails or other places of temporary confinement under control of the marshal, such commitments must be made to state jail, and it follows that a mittimus is proper if not necessary to authorize the keeper of such jail to detain the prisoner, as against a writ of *habeas-corpus* from a state court. Said Mr. Justice Story, speaking for this court, in *Randolph v. Donaldson,* 9 Cranch, 76, 86, "The keeper of a state jail is neither in fact nor in law the deputy of the marshal. He is not appointed by, nor removable at the will of, the marshal. When a prisoner is regularly committed to a state jail by the marshal, he is no longer in the custody of the marshal, nor controllable by him. The marshal has no authority to command or direct the keeper in respect to the nature of the imprisonment. . . . For certain purposes, and to certain intents, the state jail lawfully used by the United States, may be deemed to be the jail of the United States, and that keeper to be keeper of the United States. But this would no more make the marshal liable for his acts than for the acts of any other officer of the United States whose appointment is altogether independent." We do not wish to be understood as holding that a mittimus is necessary in all such cases to authorize the detention of the accused, especially if the keeper of the jail be, as is frequently the case, a deputy marshal of the United States; but that it is within the discretion of the commissioner to issue such writ, if in his opinion the safe custody of the prisoner requires this precaution; and if there be no abuse of such discretion we do not feel at liberty to review

his action. *Stafford* v. *United States*, 25 C. Cl. 280. Nor do we consider a mittimus necessary every time a prisoner is taken out and returned to jail, pending his examination, since an order of the court or the district attorney, under the statute, would be a sufficient protection to the officer.

It is true that, by section 1030 of the Revised Statutes, "no writ is necessary to bring into court any prisoner or person in custody, or for remanding him from the court into custody; but the same shall be done on the order of the court or district attorney, for which no fees shall be charged by the clerk or marshal." This section relates, however, exclusively to the action of the clerk in entering the order of the court or district attorney, and to the action of the marshal in transferring the prisoner to and from his place of detention, and has no reference whatever to his custody by a state officer pending or following his examination.

No error is assigned by the attorney general upon the allowance of the third item.

2. Item 4 is "for more than one acknowledgment for defendants' recognizances." The exception to this item is well taken. Revised Statutes, § 828, allows a clerk, "for taking an acknowledgment, twenty-five cents," but the taking of such acknowledgment in a criminal case by the accused and his sureties is a single act, for which only one fee can be charged. *Churchill* v. *United States*, 25 C. Cl. 1.

3. The exception to the fifth item, which is "for all acknowledgments to defendants' recognizances," is overruled. An acknowledgment is necessary to a judicial recognizance.

4. The allowance for drawing complaints, as "for taking and certifying depositions to file," is a proper charge. While the duty of a committing magistrate is to take complaints and issue warrants upon them, which may perhaps imply that they are written by the person making them, the general, if not the universal, practice is for the magistrate himself to put them in writing, and the Tennessee Code evidently contemplates this method of procedure in enacting as follows: Sec. 5845: "Upon information made to any magistrate of the commission of a public offense, he shall examine on oath the informant, reduce

the examination to writing and cause the examination to be signed by the person making it." Sec. 5846 : "The written examination shall set forth the facts stated by the informant tending to establish the commission of the offence and the guilt of the defendant." It is eminently proper that the magistrate, who would naturally be presumed to understand the requisites of a complaint better than the informant, who is usually unlearned in law, should himself reduce it to writing. Exception to this item is, therefore, overruled.

5. Item 7, "for entering returns to process," is unobjectionable; indeed, the Treasury Department seems to have receded from its action in disallowing this item, and paid a portion of the charge.

6. Item 8, "for writing out testimony," is clearly allowable. Not only is this the general practice in every properly conducted commissioner's office, but the rule of the Circuit Court for the Eastern District of Tennessee requires that each commissioner shall "keep a docket, showing the issuance of warrant, upon whose complaint the same was issued, the nature of the offence charged and the officer to whom delivered for execution. And when a warrant is returned, he will in all cases write out substantially the evidence of each witness as given before him, and return the same to the clerk of this court, for the information of the district attorney." The local practice of Tennessee also requires the testimony before the committing magistrate to be reduced to writing. Sec. 5887 : " The evidence of the witnesses shall be reduced to writing by the magistrate, or by his direction, and signed by the witnesses respectively."

7. The 9th, 21st and 22d items for fees for dockets, indexes, etc., appear to have been allowed upon the authority of *United States* v. *Wallace*, 116 U. S. 398, in which case it was held by this court, that under the provisions of Revised Statutes, §§ 847 and 828, a commissioner, who, by direction of the court, kept a docket with entries of each warrant issued, and subsequent proceedings thereon, made on the day of occurrence, was entitled to the same fees allowed to the clerk of a court for similar services. This case was decided in January, 1886. In the deficiency appropriation bill passed in August of the same

year, 24 Stat. 256, 274, c. 903, it was enacted that "the follow-ing sums be, and the same are hereby, appropriated, out of any money in the Treasury not otherwise appropriated, to supply deficiencies in the appropriations for the fiscal year ending June 30th, 1886, and for other objects hereinafter stated; namely, . . . Judicial: . . . For fees of commissioners, and justices of the peace acting as commissioners, fifty thousand dollars: *Provided*, That for issuing any warrant or writ, and for any other necessary service commissioners may be paid the same compensation as is allowed to clerks for like services, but they shall not be entitled to any docket fees." It is insisted that, as this proviso is contained in an appropriation bill, it should be limited in its application to the appropriation for that year, and should not be considered as a general inhibition of all allowances of docket fees. The cases of *United States* v. *Dickson*, 15 Pet. 141, and *Minis* v. *United States*, 15 Pet. 423, are cited in support of this view. The limitation and effect of provisos in enacting clauses of a statute are considered in these cases, and the rule declared, in the first of them, that "where the enacting clause is general in its language and objects, and a proviso is afterwards introduced, that proviso is construed strictly, and takes no case out of the enacting clause which does not fall fairly within its terms."

In the case of *Minis* v. *United States*, it is said by Mr. Justice Story, p. 445: "It would be somewhat unusual to find engrafted upon an act making special and temporary appropriations, any provision which was to have a general and permanent application to all future appropriations. Nor ought such an intention on the part of the legislature to be presumed, unless it is expressed in the most clear and positive terms, and where the language admits of no other reasonable interpretation. The office of a proviso, generally, is either to except something from the enacting clause, or to qualify or restrain its generality, or to exclude some possible ground of misinterpretation of it, as extending to cases not intended by the legislature to be brought into its purview. A general rule, applicable to all future cases, would most naturally be expected to find its proper place in some distinct and independent enact-

ment." In that case an act making appropriations, 4 Stat. 754, c. 26, contained a proviso that "no officer of the army shall receive any per cent or additional pay, extra allowance or compensation, in any form whatsoever, on account of disbursing any public money, appropriated by law *during the present session*, for fortifications, execution of surveys, works of internal improvement, building of arsenals, purchase of public supplies of any description or for any other service or duty whatsoever, unless authorized by law." This proviso was held to be limited to the appropriation for that year, and not to be permanent in its operation.

In the case under consideration, if the proviso had been simply that commissioners should not be entitled to any docket fees, we should have had little doubt that it would be held as applying only to the $50,000 appropriated in the bill; but as the proviso contains a substantial reënactment of the clause of the Revised Statutes, § 847, fixing the fees for similar services, with the prohibition against docket fees tacked thereto as an amendment, we find it impossible to give effect to the whole proviso without construing it as expressing the intention of Congress to amend that clause of § 847. The language of that clause is: "For issuing any warrant or writ, and for any other service, the same compensation as is allowed to clerks for like services." The language of the proviso is: "For issuing any warrant or writ and for any other necessary service commissioners may be paid the same compensation as is allowed to clerks for like services, but they shall not be entitled to any docket fees." The repetition of this language was obviously useless and nugatory, unless upon the theory that prohibition of docket fees was intended as an amendment to it, since, by § 847, commissioners were already to be paid the same compensation as clerks for like services. Indeed, it seems highly improbable that Congress should put the fees of commissioners upon the same basis as those of clerks, with the exception of docket fees, and make it a mere temporary expedient applicable only to the appropriation for a single year, when the same reasons would continue to exist for making it of permanent application. A majority of the courts in which

this question has arisen have adopted this view. *Faris* v. *United States*, 23 C. Cl. 374; *Strong* v. *United States*, 34 Fed. Rep. 17; *McKinistry* v. *United States*, 34 Fed. Rep. 211; *Thornley* v. *United States*, 37 Fed. Rep. 765; *Calvert* v. *United States*, 37 Fed. Rep. 762; *Crawford* v. *United States*, 40 Fed. Rep. 446; *Goodrich* v. *United States*, 42 Fed. Rep. 392.

8. Items 10, 11, 12 and 13 are for per diem fees in various cases where continuances were granted at the request of the defendant. While it is doubtless the duty of the commissioner to make as speedy a disposition of cases as is possible, consistent with a due regard for the interests of the government and the protection of the accused, we held in *United States* v. *Jones*, 134 U. S. 483, that in hearing and deciding upon criminal charges he acted in a judicial capacity, and we have no doubt he is invested with a discretionary power to suspend the hearing of a case where, in his judgment, a proper regard for the interests of justice requires it. This item was properly allowed.

These are all the items to the allowance of which exception was taken by the government. It is true that a number of items were rejected by the court below, which, upon the authority of *United States* v. *Jones*, 134 U. S. 483, appear to have been properly allowable, but as no appeal was taken by the plaintiff from the disallowance of such items we do not feel at liberty to consider them. *United States* v. *Hickey*, 17 Wall. 9.

*The case will be remanded to the District Court with directions to vacate the judgment heretofore rendered, and enter a new judgment in conformity to this opinion.*