# UNITED STATES *v.* McDERMOTT.

# McDERMOTT *v.* UNITED STATES.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF KENTUCKY.

Nos 1152, 1603. Argued March 12, 13, 1891. — Decided May 11, 1891.

There being a dispute between the United States and a Commissioner of a Circuit Court of the United States, acting as Chief Supervisor of Elections, respecting the official fees of the latter; *Held,*

 (1) That he was entitled to charge as commissioner for drawing the oaths of the supervisors, for administering them and for his jurat to each oath;

 (2) Also for drawing affidavits of services by each supervisor for which compensation was claimed, as such affidavit had been required by the government;

 (3) That he should be allowed for drawing complaints in criminal proceedings;

 (4) That the charges for docket fees should be disallowed;

 (5) That he should be allowed for preparing and printing the instructions to supervisors as a whole, but not a charge per folio for each copy furnished to a supervisor;

 (6) That the same rule should be applied to special instructions to supervisors;

 (7) That the charge for notifying supervisors of their appointments should be disallowed;

 (8) That the department of justice having demanded copies of the oaths of office of the supervisors, the charge for them should be allowed;

 (9) That the charges for certificates to the deputy marshals' and supervisors' accounts should be allowed for the same reason;

 (10) That the statute makes no provision for the allowance of mileage and attendance upon court in his capacity of commissioner;

 (11) That his charge for administering oaths to voters in his capacity of commissioner should be allowed;

 (12) That his per diem charge of $5 per day should be disallowed.

THIS action was brought by McDermott for the recovery of certain sums claimed to be due him for services as Commissioner of the Circuit Court for the District of Kentucky, and also for his fees as Chief Supervisor of Elections during the

months of October and November, 1888. The petition set out in full the services for which the several charges were made, to which the district attorney interposed a demurrer, raising only questions of law as to the legality of the several charges. Upon the hearing before the Circuit Court judgment was rendered for $1500.05, 40 Fed. Rep. 217, from which both parties appealed to this court.

*Mr. John C. Chaney* for the United States. *Mr. Assistant Attorney General Cotton* was with him on the brief.

*Mr. Orrin B. Hallam* for McDermott.

Mr. Justice Brown delivered the opinion of the court.

No question was made as to petitioner's appointment as Commissioner and Chief Supervisor, nor as to his account having been duly approved by the court, as required by the act of Congress of February 22, 1875, 18 Stat. 333, c. 95, and forwarded to the department at Washington. That the services had actually been performed was also admitted by the district attorney. Errors are assigned, however, by the Attorney General, to the allowance of the following items of commissioner's fees :

1. For drawing oaths of 369 supervisors, at 15 cents per folio; for administering each oath, 10 cents; and for his jurat to each oath, 15 cents.

By Revised Statutes, § 2026, it is made the duty of the Chief Supervisor to "prepare and furnish all necessary books, forms, blanks and instructions for the use and direction of the supervisors of election in the several cities and towns in their respective districts; . . . and he shall receive, preserve and file all oaths of office of supervisors of election, and of all special deputy marshals appointed under the provisions of this title."

From this it appears to have been the intention of Congress that the supervisors should take an oath, which should be reduced to writing and filed with the Chief Supervisor; and

in consideration of the number of such supervisors, their short tenure of office, and presumed inexperience in the drawing of legal documents, and of the desirableness of securing uniformity in the oaths so administered, it is fairly inferable that it was the intention of Congress that the Chief Supervisor should himself prepare these oaths, and file them in his office; but as no authority is given him by the statute to administer the oath, and as no other person is specially designated for that purpose, the oath may properly be taken before any one authorized by the laws of the United States to administer oaths. As petitioner is both Chief Supervisor and Commissioner, he may be allowed at the rate of 15 cents per folio for drawing the oath and 10 cents for administering it, as charged in his account. By requiring the Chief Supervisor to be appointed from the United States commissioners, and also providing (§ 2031) that there shall be allowed and paid to him, for his services as such officer, compensation "apart from, and in excess of, all fees allowed by law for the performance of any duty as Circuit Court commissioner," it was manifestly intended by Congress that he should be allowed to charge for such services as he rendered in his capacity as United States commissioner, but was not authorized to perform in his capacity as Chief Supervisor.

(*a*) With regard to the jurat, we think it a proper charge under that clause of that section 828 which allows 15 cents per folio "for entering any return, . . . or making any record, *certificate,* return or report." A jurat is in reality a certificate of the officer who administered the oath that the affiant had subscribed and sworn to the same before him.

2. Drawing affidavits of supervisors as to the actual performance of the services for which compensation was claimed by them, administering the oath and drawing the jurat to such affidavits.

Upon what evidence the department shall act in determining the compensation to which each supervisor is entitled must depend somewhat upon the discretion of the auditing officers or head of the department. It would certainly be competent for the department to pay upon such certified rolls

as are used in the case of jurors and witnesses; or it may require the accounts to be verified by the affidavits of the claimants. In respect to these accounts, the Attorney General wrote to the marshal under date of November 13, 1888, as follows: "In answer to your letter of the 6th inst., you are informed that commissioners' affidavits, and badges of special deputy marshals and of supervisors of election should be affixed to the pay rolls as vouchers when forwarded to the Treasury for settlement." By the commissioner's affidavit is probably understood an affidavit sworn to before a commissioner. If the government requires these affidavits for its own protection, it is no more than right and just that it should pay for them. We do not wish to be understood, however, as holding that in every case the expense of verifying the accounts of persons having claims against the government is properly chargeable against it, but for the reasons stated in support of the allowance of item 1, we think it should be allowed in this case. A similar practice obtains in the payment of jurors and witnesses.

3. The charges for drawing complaints in criminal proceedings are allowed for the reasons stated in *United States* v. *Ewing, ante*, 142. The local practice of Kentucky, as well as the almost universal practice of commissioners to draw these complaints themselves, is ample justification for this charge. It appears to have been the practice of the Department of Justice for the past twenty years to allow these as proper charges for drawing complaints, and if there were any doubt as to the propriety of their allowance, such doubt, in view of this long continued practice, should be resolved against the government.

4. The charges for docket fees must be disallowed upon the authority of *United States* v. *Ewing, ante*, 142, wherein the question is fully considered.

Exceptions were also taken to the allowance of the following fees charged for services as Chief Supervisor:

5. Preparing and furnishing instructions to supervisors, $911.25. With regard to this, petitioner states, that as required by § 2026, he " prepared and furnished necessary instruc-

tions for the use and direction of the supervisors" in the city of Louisville, with regard to registering voters, and explained to them their rights, powers and duties under the law with reference to such registration. "Said instructions were prepared after a careful examination of the statutes of the United States and of the State of Kentucky, and the decisions of their courts on the subject of elections, and said instructions were given to said supervisors orally and on paper. Said printed instructions contained ten folios each, and they were delivered to 215 supervisors, and for drafting said paper the statute allows 15 cents per folio; and the proper charge for said instructions is $322.50." The petitioner also prepared and delivered to 219 supervisors for the same city instructions relative to their rights, powers and duties at said election, and relative to all legal questions that might arise, each one of which contained 13 folios, for which he claims the sum of $427.05. He also makes a further claim to $161.70 for instructions to 98 supervisors who served in some of the smaller towns.

By § 2026 it is made the duty of the Chief Supervisor to "prepare and furnish all necessary books, forms, blanks and instructions for the use and direction of the supervisors of election in the several cities and towns in their respective districts;" but § 2031, prescribing the fees of the Chief Supervisor, makes no mention of compensation for services of this description, although an allowance of 15 cents per folio is made for a copy "of any paper on file" in his office. It is by virtue of this clause that this large amount is claimed. These instructions are prepared by the Chief Supervisor, printed and a copy transmitted to each supervisor. Of the propriety of furnishing these instructions we have no doubt, and that the expense of printing the same is a proper charge against the government would seem to follow from the language of § 2026, which makes it his duty to prepare and furnish such instructions. For preparing these instructions we think he is entitled to charge at the rate of 15 cents per folio, but we cannot think it was the intention of Congress to authorize a similar charge for each copy furnished to supervisors. These

instructions are in no sense original documents, nor do we think they can fairly be considered as copies of papers on file, within the meaning of § 2031. It may be difficult to classify them under any particular provision of the statute; but the very magnitude of the charge as compared with the service rendered, or the expense incurred in rendering it, is in itself a cogent argument that it was not within the contemplation of Congress. This was the ruling of the Court of Claims in the case of *Muirhead*, 13 C. Cl. 251 and 15 C. Cl. 116, and we think it is correct. The exception to this charge is accordingly sustained.

6. The same rule should be applied to the special instructions issued to 23 supervisors at one time and 22 at another. So far as they are original, he is entitled to charge at the rate of 15 cents per folio; so far as they are copies, he is entitled to the expense of printing.

7. Exception was also taken by the petitioner to the disallowance of a claim for $79.35 for notices sent by him to the several supervisors of their appointment. It is provided by § 2026 " that the Chief Supervisor shall receive the applications of all parties for appointment to such positions," and shall present such applications to the judge, and " furnish information to him in respect to the appointment by the court of such supervisors," and that he shall also " receive, preserve and file all (their) oaths of office," but there is no provision for notifying them of their appointment.

We agree with the Circuit Judge that, while it is evidently proper that a notice of their appointment should come from the Chief Supervisor, and that provision should be made for payment for this service, there is no authority in the statute for allowing this charge, and that it is beyond the power of the courts to supply this omission.

8. For furnishing copies of the oaths of office of supervisors to the Department of Justice. The propriety of this charge can be better understood by a reference to the correspondence between the Chief Supervisor and the Attorney General. The former writes under date of November 19, 1888: " In your instructions to the United States marshal relative to the pay-

ment of supervisors [you say they] must present their 'commissions, oath, and badge of office, with an affidavit that they are the persons to whom the commission issued; that they performed the day's service as charged,' etc. 'The same facts should also be known to you through other means.' The supervisor's oath of office, I am, by the statute, required to file with my papers and preserve; but if you wish, and so order, I will give each supervisor a certified copy of the oath of office, and will charge the government for the copy." In reply, the Attorney General writes as follows: "In answer to your letter of 18th instant, you are requested to give each supervisor a certified copy of his oath of office, that the record of his right to payment may be made complete." Under these circumstances he is clearly entitled to a fee of 15 cents per folio as for "a copy of a paper on file" in his office. The department, having demanded it, is not in a position to claim that it was unauthorized.

9. The 9th item, for certificates to the deputy marshals' and supervisors' accounts, falls within the same category. In his letter to the Attorney General of November 19, 1888, from which the above extract was made, the petitioner also stated as follows: "I shall also attach to each affidavit made to prove the number of days' service a certificate of my own, showing for how many days each supervisor is entitled to pay." In a letter of November 30 to the district attorney he says: "You said some weeks ago that it was your opinion that I should attach to each of such supervisors' affidavits my official certificate, under seal, stating that the claim was just. Since then the Attorney General has written me to make an official copy of each supervisor's oath of office filed with me, and to give official copy to United States marshal. (1) Should I now give him also an official copy of each deputy marshal's oath of office filed? and (2) should I attach my certificate, under seal, of the justness of each claim made by said deputy marshals to the affidavit made by them when they presented their claims?" In answer to this the district attorney writes him: "I would say that I think you are required to furnish an official copy of the oath of office of each of the deputy

marshals and supervisors, attested by your seal of office, and also that your certificate upon their affidavits of their services should also be attested by your seal of office." If this method of verifying and approving the accounts of these officers was needlessly exact and complicated, it does not seem to have been the fault of the petitioner, as he was careful to obtain instructions beforehand, and the government is in no position to repudiate the act of the department in demanding these certificates. This amount should therefore be allowed.

10. The petitioner excepts to the refusal of the court to allow him mileage, at the rate of 10 cents per mile, for a trip to Covington and Newport under the orders of the court. By section 2012, "the court, when so opened by the judge, shall proceed to appoint and commission, from day to day and from time to time, . . . for each election district or voting precinct . . . two citizens, residents of the city or town, etc.," and by section 2013, "the Circuit Court, when opened by the judge, as required in the two preceding sections, shall therefrom and thereafter, and up to and including the day following the day of election, be always open for the transaction of business under this title." By § 2026 it is made the duty of the Chief Supervisor to "receive the applications of all parties for appointment to such positions;" and upon the opening of the Circuit Court "he shall present such applications to the judge thereof, and furnish information to him in respect to the appointment by the court of such supervisors of election." It is perhaps fair to infer from the language of the last section that it was contemplated that the supervisors should attend the court in person, but there seems to have been no provision made for such compensation, or for mileage in going and returning. It is true that by section 847 a commissioner is allowed the same compensation allowed to clerks for like services, and in section 828 the clerk is allowed for mileage and attendance upon court. But the difficulty is that the petitioner did not make the journey in his capacity as commissioner, but in that of supervisor, and there is no provision for allowance of mileage to the latter. We express no

opinion upon the point whether he is entitled to his expenses, as no claim is made for them, *eo nomine*.

11. Fees for swearing twenty-three voters as to their qualifications and transmitting their affidavits to the supervisors. By § 2026 it is made the duty of the Chief Supervisor to "cause the names of those upon any such list [of electors] whose right to register and vote is honestly doubted, to be verified by proper inquiry and examination at the respective places by them assigned as their residences;" and while he has no authority as Chief Supervisor to administer an oath to such voters, it certainly would be a proper method of inquiry and examination. He did have such authority as commissioner, and for administering such oath he is entitled by law to his fee of 10 cents and for his jurat 15 cents, which is the amount charged in this case. There was no impropriety in his using as Chief Supervisor the information he had obtained as commissioner, and, indeed, the Chief Supervisor would probably have been given authority to administer oaths in that capacity had the act not required him to be appointed from among the Circuit Court commissioners.

12. The last item to which exception is taken is to the disallowance of per diems for 25 days' attendance upon court at $5 per day. As we have already stated, it is perhaps a fair inference from § 2026 that the personal presence of the Chief Supervisor at the sessions of the court was contemplated by Congress; but there is no provision in the law for a per diem fee. Indeed, the implication from § 2031 is opposed to it. This section provides that "there shall be allowed and paid to the Chief Supervisor, for his services as such officer, the following compensation apart from, and in excess of, all fees allowed by law for the performance of any duty as Circuit Court commissioner;" among which, however, there is no mention of any fee for attendance upon court. "And there shall be allowed and paid to each supervisor of election, and each special deputy marshal, who is appointed and performs his duty under the preceding provisions, compensation at the rate of $5 for each day he is actually on duty, not exceeding ten days." The intention of Congress evidently was that the

Chief Supervisor, whose duties are entirely distinct from those of an ordinary supervisor, should be paid by fees, and that the ordinary supervisor should receive as his sole compensation $5 per day while actually on duty, referring, evidently, to their duty at the registration and polls, and not to any supposed obligation to attend upon the court.  As a commissioner, he is only entitled to a per diem of $5 when hearing or deciding a criminal case, and nothing for attendance upon court.

It results that the action of the Circuit Court must be sustained, except in regard to the two items for docket fees and instructions to supervisors, and that its judgment should be reduced by the amount disallowed of those two items.

The case will therefore be

*Remanded to the Circuit Court, with directions to vacate the judgment heretofore rendered, and to enter a new judgment in conformity to this opinion.*