# CLOUGH v. UNITED STATES.

## (Circuit Court, W. D. Tennessee. April 13, 1893.)

## No. 3,127.

1. UNITED STATES COMMISSIONERS—FEES—ACKNOWLEDGMENT OF BAIL BONDS.

A commissioner of the United States courts can charge only one acknowledgment fee for the principal and sureties in a bail bond, and not a separate fee for each. U. S. v. Ewing, 11 Sup. Ct. Rep. 743, 140 U. S. 142, followed.

2. SAME—AFFIXING SEALS.

A commissioner, in Tennessee, cannot charge a fee for affixing seals to writs. U. S. v. Clough, 55 Fed. Rep. 373, followed.

3. SAME—DRAWING COMPLAINTS.

A United States commissioner is entitled to fees for drawing complaints in criminal cases at the rate of 20 cents per folio. U. S. v. Ewing, 11 Sup. Ct. Rep. 743, 140 U. S. 142, followed.

4. SAME—COPIES OF PROCESS—DRAFTING AFFIDAVITS—CERTIFYING OATHS.

A commissioner is also entitled to fees for copies of process returned to court in cases where preliminary examinations in criminal cases have been had; for drafting affidavits of sureties in bail bonds; for certifying to oaths officially taken before him; for entering the returns of, and filing, process, and for issuing mittimus writs. U. S. v. Barber, 11 Sup. Ct. Rep. 751, 140 U. S. 177; U. S. v. Ewing, 11 Sup. Ct. Rep. 743, 140 U. S. 142, followed.

5. SAME—CERTIFICATES TO WITNESSES.

He is likewise entitled to fees for certificates furnished to witnesses, of the amount due them for attendance before him, as commissioner. U. S. v. Barber, 11 Sup. Ct. Rep. 749, 140 U. S. 164, followed.

6. SAME—SETTING OUT NAME OF DEFENDANT.

If the department refuse payment of the account of a clerk of a federal court for services rendered the government in cases of arrest, on the ground that the names of the defendants were not given, and a duplicate of the account filed in the clerk's office shows who the defendants were, and the records of the court show that they were subsequently indicted and tried, the court will direct payment of the fees.

7. SAME—FILING PAPERS—ENTERING ORDERS—RECORDING BONDS.

The clerk of the federal courts is entitled to charge for filing papers sent in by commissioners; for entering orders approving officers' accounts; for recording official bonds on minutes; for making final records; and for certifying to marshal's fees of jurors and witnesses.

8. SAME—FILING REGISTRY REPORT.

He is entitled to a fee of 10 cents for filing a registry report, under Rev. St. § 828, allowing that fee for filing "every declaration * * * or other paper."

9. SAME—COPIES OF MITTIMUS—COPIES OF SCI. FA.

He is also entitled to charge fees for copies of mittimus writs issued under Rev. St. § 1028, and for copies of writs of sci. fa. issued under Rev. St. § 716; they having been issued by order of court, and not as matter of course, in the routine of office.

10. SAME—SEVERAL DEFENDANTS—SEPARATE WRITS.

Where several defendants are jointly indicted for conspiracy, the department erred in refusing payment of the charges of the clerk for capias writs for their arrest on the ground that a separate writ was issued against each defendant under the practice of the court.

11. SAME—SWEARING JURORS.

The swearing on the first day of the term of persons summoned as grand and petit jurors, to make true answer touching their qualifications as

jurors, is not within Rev. St. § 828, disallowing compensation to a clerk for administering oaths to jurors; and he is entitled to a fee of 10 cents for each person thus sworn.

**12. SAME—FILING TICKETS—MAKING DOCKETS.**
The clerk is entitled to fees for filing tickets of the district attorney discharging witnesses, and for making dockets and indexes of sci. fa. cases in the district courts. Taylor v. U. S., 45 Fed. Rep. 531, followed.

**13. SAME—OFFICIAL REPORTS TO DEPARTMENT.**
The law having made it the duty of the clerk to make official reports to the department of all litigation against the United States, or to which it is a party, he is entitled to charge therefor, under Rev. St. U. S. § 828, allowing him 15 cents per folio "for * * * making any record * * * or report."

**14. SAME—NATURE OF SUIT.**
If the department refuses to allow an account of the clerk on the ground that it does not sufficiently describe the nature of the suits in which the service was rendered, the court will direct payment of the account, if its records show that the services were actually rendered.

**15. SAME—ORDERS APPOINTING ELECTION SUPERVISORS.**
The clerk is entitled to charge fees for entering orders appointing supervisors of elections at the rate of 15 cents per folio, and also for drafting their commissions.

**16. SAME—PREPARING OATHS OF SUPERVISORS.**
He is also entited to fees for preparing the official oaths of such supervisors. U. S. v. McDermott, 11 Sup. Ct. Rep. 746, 140 U. S. 151, followed.

**17. SAME—AFFIXING COURT SEAL.**
And he is also entitled to $1 for issuing each commission, but not to 20 cents for affixing the court seal thereto.

**18. SAME—CERTIFIED TRANSCRIPTS IN CRIMINAL CASE.**
The clerk is entitled to charge a fee of 10 cents per folio for certified transcripts in criminal cases, made at the request of the district attorney, to be used outside the state, by the United States, as evidence to prevent the discharge on writs of habeas corpus of defendants undergoing sentences imposed by the federal court.

**19. SAME—ATTENDANCE ON TWO COURTS.**
Rev. St. § 828, allows to one who is clerk of both the circuit and district courts a per diem of five dollars, and no more, though both courts are in session at the same time. *Held*, that the clerk might elect as to which court he should charge such per diem, and, having so elected, the department could not disallow the charge as against that court, and charge it against the other.

At Law. Action by John B. Clough against the United States to recover fees for services rendered as clerk of the circuit and district courts, and as commissioner of the circuit court. Judgment for plaintiff.

John B. Clough, pro se.
S. W. Hawkins, Dist. Atty., for the United States.

HAMMOND, J. This suit was instituted by the filing of the plaintiff's verified petition in the circuit court on April 18, 1891, and the jurisdictional requirements of the statute authorizing such suits against the United States have been fully complied with. The petitioner herein claims fees from the United States for services performed as clerk of the circuit and district courts of the United

States for this district, and as commissioner of the circuit courts; and he has so scheduled the items claimed that the respective amounts sought to be recovered as clerk of either court, and as commissioner, are conveniently displayed and itemized, and are all for services rendered previously to January 1, 1891. Accounts have been duly rendered to the government, and properly approved by the courts here,—either circuit or district,—embracing all the items set forth in the petition, and have been audited at Washington, and the items sued for disallowed.

The defendant, "for plea or answer to the plaintiff's petition herein this day filed, says that the defendant admits the performance of the services by plaintiff, the alleged fees for which he seeks to recover a judgment against the defendant by this suit, and, for a defense to this action, further says that plaintiff ought not, in law, to recover therefor, because defendant says that there is no statute of the United States, or other law, under which plaintiff should or can obtain judgment for said services or for such fees," and issue has been properly joined thereon.

Among the items claimed here for services rendered by petitioner as a commissioner of the circuit courts are fees for making dockets and indexes, $367, and an amount erroneously disallowed him, of $197, on his accounts for the six months ending March 31, 1890; and he produces the treasury statement sent him from the office of the first comptroller of the treasury, where the error is apparent, the total disallowance therein being $197 in excess of all the items disallowed at the department,—the error being one of addition, apparently. But in the certified transcript from the books of the treasury sent to the district attorney as evidence in this case is an item of disallowance of just this sum, for making "dockets and indexes," etc.; and the commissioner's accounts show he charged a like amount for such fees during that period. The error, therefore, was in omitting from the statement sent petitioner the item of $197 for docket fees. The two items, amounting to $564, must therefore be disallowed here. U. S. v. Ewing, 140 U. S. 142, 11 Sup. Ct. Rep. 743; U. S. v. McDermott, 140 U. S. 151, 11 Sup. Ct. Rep. 746; Clough v. U. S., 47 Fed. Rep. 791.

He also claims fees for taking acknowledgments of principal and sureties to bail bonds, the charge being made at 25 cents for the acknowledgment of each person thereto. It was ruled in the three cases just cited that only one acknowledgment fee is chargeable for the principal and sureties on each bond. A mere inspection of Schedule C to the petition here shows that under such ruling the petitioner should be allowed the sum of $31.25; and the $184.25, balance of the item, must be disallowed.

The sum of $113.80, being fees for affixing seals to writs, at 20 cents each, must be now disallowed, under the recent decision in U. S. v. Clough, (Cir. Ct. App; filed at Cincinnati, Ohio, February 6, 1893,) 55 Fed. Rep. 373; Id., 47 Fed. Rep. 791, 795, 796.

The amount claimed for drawing complaints (only disallowed in two out of the six accounts here embracing them) must, of course,

be allowed. U. S. v. Ewing, supra; U. S. v. McDermott, supra; U. S. v. Barber, 140 U. S. 177, 11 Sup. Ct. Rep. 751; Clough v. U. S., supra. Petitioner originally charged these fees at 15 cents a folio, while the supreme court, in the cases just cited, has since ruled that the statute authorized the charge at 20 cents per folio. He is therefore entitled to a decree for the sum of $57.60 in this behalf.

The fees claimed for "copies of process," etc., returned to the court under section 1014, Rev. St., in cases where preliminary examinations were had, ($13.80,) as well as those for drafting affidavits of sureties in bail bonds, ($10.10,) and for certifying to oaths officially taken before him, (31.65,) have been adjudged in favor of commissioners by the supreme court in U. S. v. Barber, supra; and in U. S. v. Ewing, supra, that court held that fees for entering the returns of and filing process, and for the issuance of mittimus writs, were also properly chargeable against the United States by commissioners. These items, amounting, respectively, to $22.20 and $1.80, are therefore allowed here.

The small item of $2.55 for issuing certificates to witnesses for payment by the marshal of their fees for attendance before him as commissioner, charged at 15 cents each, is allowed. In all the accounts of the commissioner involved in this case, and extending over a period of two years, such fees have only been questioned to this trifling extent; and fees for like services, charged in a different mode, were allowed in U. S. v. Barber, 140 U. S. 164, 167, 11 Sup. Ct. Rep. 749.

Payment of the remaining item, of $11.05, was refused at the department because the "name of the defendant" was not given in the account. The retained duplicate filed in the clerk's office shows who the defendant in the case was, and the records of this court show that he was subsequently indicted and tried for the offense for which he was held to bail. The item is adjudged in petitioner's favor. It follows from the foregoing that petitioner is entitled to a decree in his favor, for services rendered by him as commissioner, in the sum of $242.

The amounts claimed by plaintiff as clerk of our circuit and district courts appear in Schedules A and B, respectively, to his petition, and may be so grouped as to present comparatively few subjects for consideration by the court, although they are composed of numerous items, and cover a period of between four and five years. The legality of none of the fees claimed in this suit had been directly passed upon by the supreme court when the same was instituted, but most of them were considered by that court in the fee cases decided in the summer of 1891, since which time the differences between clerks' charges and rulings of the treasury officials in these matters have naturally very largely disappeared.

Petitioner has withdrawn the items of the petition herein for fees for entering on the court minutes certain orders in criminal and other cases, and hence they need not be considered; and under the decision in U. S. v. Clough, supra, all fees for affixing seals of

court to process and commissions issued out of the clerk's offices are disallowed the plaintiff, the total of these items being the sum of $1,422.25. This only leaves for consideration the following:

| Clerk's Fees. | Circuit. | District. | Amounts. |
|---|---|---|---|
| 1. For filing papers sent in by commissioners..... | $  9 00 | $ 34 10 | $  43 10 |
| 2. For filing registry reports, (R. S. § 798)......... | 90 | 1 60 | 2 50 |
| 3. For copies mittimus writs issued, (R. S. § 1028) | 24 55 | 22 45 | 47 00 |
| 4. For copies scire facias writs issued, (R. S. § 716).. | 49 05 | 100 45 | 149 50 |
| 5. For entering orders approving officers' accounts | 5 10 | 5 35 | 10 45 |
| 6. For recording official bonds on minutes........ | 29 20 | 12 20 | 41 40 |
| 7. For issuing court writs, capias, and mittimus... | 8 75 | 4 80 | 13 55 |
| 8. For making final or complete records.......... | 826 80 | 693 50 | 1,520 30 |
| 9. For swearing jurors on voir dire................ | 44 10 | 43 40 | 87 50 |
| 10. For filing tickets of district attorney, discharging witnesses............................ | 102 20 | 171 00 | 273 30 |
| 11. For dockets and indexes, sci. fa. cases in the district courts....... | | | 14 00 |
| 12. For making official reports to department       "       "    ... ...○ | | | 8 45 |
| 13. For per diem fees for attendance, circuit courts.... .... .........○.. | | | 10 00 |
| 14. For all fees in two cases in the       "       "    ....................... | | | 8 90 |
| 15. For entering orders appointing election supervisors, circuit........ | | | 32 45 |
| 16. For drafting official oaths of       "       "       "    .........○ | | | 82 60 |
| 17. For issuing commissions to       "       "       "    ........ | | | 319 70 |
| 18. For copies criminal records sent to penitentiary,       "    ...○.....○ | | | 42 00 |
| 19. For certifying to marshal fees of jurors and witnesses, "    ...... .. | | | 69 60 |
| 20. For errors in addition in comptroller's statement,       "    .........○.○ | | | 9 50 |
| 21. For transfer of fees by comptroller to district from       "    ....... ○○. | | | 134 40 |

It is frankly conceded by the district attorney that the right to the fees embraced in items 1, 5, 6, 8, and 19 of this schedule has been directly ruled in petitioner's favor by the supreme court in U. S. v. Van Duzee, 140 U. S. 169, 11 Sup. Ct. Rep. 758, the opinion of the court being delivered by the supreme justice of this circuit. These amounts are therefore allowed, there being no question whatever as to the performance of the services charged for.

The small item of $2.50 for filing registry reports is also allowed. The statute provides that "at each regular session of any court of the United States the clerk shall present to the court an account of all moneys remaining therein, or subject to its order, stating, in detail, in what causes they are deposited, and in what causes payments have been made; and such accounts, and the vouchers thereof, shall be filed in the court." Rev. St. § 798. The clerk is required to file them, the plea admits he has filed them, the records of the court show they are on file, and the statute prescribes a fee of 10 cents for filing "every declaration, plea, or other paper." Rev. St. § 828.

The copies of mittimus writs, the fees for which are here sued for, (Schedule 3, supra,) were made by the clerk under this provision of the statute:

"Whenever a prisoner is committed to a sheriff or jailer by virtue of a writ, warrant, or mittimus, a copy thereof shall be delivered to such sheriff or jailer, as his authority to hold the prisoner; and the original writ or warrant or mittimus shall be returned to the proper court or officer, with the officer's return thereon." Rev. St. § 1028.

In Taylor v. U. S., 45 Fed. Rep. 531, 535, the question presented for decision was whether such copies should be authenticated by the certificate of the clerk and seal of the court thereto, and it was ruled that "a copy not authenticated by such certificate and seal

would not, in law, be a compliance with the statute quoted;" but there was no contention that it was not the duty of the clerk to issue the copies, and the record there showed that the fees for such copies, under the rulings of the present treasury accounting officers, were no longer questioned; and such is the case here. There is no reason why petitioner should not recover for these fees, as well as for like fees for copies of scire facias writs, (Schedule 4, supra,) issued with such writs, by the clerk for service by the marshal on the defendants therein. Jones v. U. S., 39 Fed. Rep. 410, 413. These fees are no longer questioned at the treasury department, and the district attorney does not question them here, for the copies were made and issued with the original writs, according to the uniform practice of the court for more than 20 years, and under the express orders of the court, made in the cases, at the instance of the law officer of the government. And in U. S. v. Van Duzee, supra, Mr. Justice Brown, for the supreme court, uses this language:

"When the clerk performs a service in obedience to an order of the court, he is as much entitled to compensation as if he were able to put his finger upon a particular clause of a statute authorizing compensation for such services."

The small item marked 7 in said schedule is composed of fees for issuing capias writs in the circuit court, and a mittimus and removal writ in the district court. All these writs were ordered by the court. The fee for the mittimus was disallowed by the late comptroller because one had issued the previous term; but, the prisoner having escaped after sentence, this second writ properly issued. The correctness of the writ for the removal of a prisoner from one division of the district to another is satisfactorily established in Taylor v. U. S., 45 Fed. Rep. 531, 538, 539, where the exact point was raised and decided in this state in 1891. The fees for these capias writs were disallowed because a single writ issued against each of several defendants in a case for conspiracy to defraud the United States. For the convenience of the marshal and his deputies in executing writs for the arrest of defendants charged by indictment with crime, this course was proper, and is usual. Ordinarily the district attorney moves the court for separate writs in such cases, as an extended examination of the records of the court here shows; and the motion is always granted, and separate writs always issue. It is doubtful if a case can be found in the courts here, or at Jackson, where a single writ has ever issued for the arrest of more than one defendant. Let this amount be allowed petitioner.

The fees grouped in Schedule 9 are for swearing jurors, on their voir dire, at 10 cents each. The statute prescribes a fee to clerks, "for administering an oath or affirmation, except to a juror, ten cents." Rev. St. § 828. The petitioner's contention here is that this exception in the statute pertains only to oaths administered to grand jurors, when selected as a grand jury, to "diligently inquire, and true presentment make, of all offenses given them in charge," etc., and to petit jurors, when impaneled in a case as a petit jury,

"well and truly to try the issue therein joined between the parties," or "well and truly to assess the plaintiff's damages," etc., when there is a writ of inquiry on a judgment by default in favor of a plaintiff; and that the exception in the statute does not apply to oaths preliminarily administered to men summoned to serve on juries, concerning their statutory qualifications to become jurors at all, any more than to oaths administered to them after their discharge as jurors, in verification of their claim to compensation for attendance and travel. The fees for these latter oaths have never been called in question at the treasury. In this district all claims for payment of their fees to jurors and witnesses by the United States are thus verified by oaths taken before the clerk; and, in speaking of the practice concerning such claims of witnesses, Judge Jackson, in Taylor v. U. S., 45 Fed. Rep. 531, 536, says:

"Affidavits of these government witnesses are taken severally by the clerk, as to the number of days they have attended court, and the number of miles traveled. These services are usual, and highly proper, and the fees therefor are according to the statute. The claim of the witness to his fees is thus based upon his oath as to the facts, and the evidence of the clerk's care in the premises is preserved as a part of the records of the court."

In Brewer v. Jacobs, 22 Fed. Rep. 217, 231–244, this court, in 1884, had occasion, on motion for new trial, partly on the ground that an unqualified juror had sat in the case, to carefully and very fully examine "the whole practice of the court in the matter of impaneling its juries," and found "that, substantially, it now conforms to the requirements of the law, and is supported by the authorities." This practice is as follows: On the first day of each term the marshal returns to the court or clerk's office the writ of venire facias returnable to that day, and usually the first business after the appointment of a crier and the bailiffs is the impaneling of the grand jury. The persons shown by the writ to have been summoned are called by the marshal, appear at the bar of the court, are severally sworn by the clerk, under its direction, "well and truly to answer the questions propounded to them touching their residence, citizenship, age, property qualification, previous service in the court as jurors," etc., and those of them found to possess the statutory qualifications are impaneled, and those not qualified are then excused, without ever becoming jurors at all, or serving in such capacity. The record entry, to copy at random from the court minutes, is as follows:

"Upon the regular call, now had in open court, of the panel to the writ of venire facias duly issued and returnable before this court to-day, the following named persons, returned as served by the marshal thereunder, answered, were sworn in open court by the clerk, and examined before the court touching their qualifications as jurors, and were duly impaneled as grand jurors," etc.

And a similar entry is made, and a like practice prevails, in ascertaining those possessing the requisite qualifications to become petit jurors. Subsequently, as cases are called for trial, the petit juries are impaneled from those so previously examined, when they are sworn on their voir dire, strictly, if need be, and when "elected"

are sworn in the case. But the fees claimed here are only for these preliminary oaths on the first day of the term, and, in strictness, they are not administered to persons examined as jurors upon voir dire at all, though they are so scheduled in the petition here. Id., 244. "So, strictly speaking, and at common law, a jury is impaneled only when they have been elected, and are ready to be sworn, though the modern use of the term often indicates the jury as sworn in a particular case. Thomp. & M. Jur. § 257; 2 Bac. Abr. 742, tit. 'Juries,' B 8; Co. Litt. 158b; 1 Abb. Law. Dict. 200, 'Challenge;' 2 Bouv. Law Dict. 271, 'Panel;' State v. Potter, 18 Conn. 169, 175." Id. 242. And speaking of our practice here, and of these preliminary examinations at the opening of the term, it was said in the case last cited:

"It is in no sense whatever an examination of the juror on his voir dire. It is, in law, no trial of a juror for the purposes for which originally triers were appointed, nor would the circumstances give the party in court the right to challenge a juror at that time, nor has a challenge ever, in this court, been made on such a call." Id. 243.

The ruling of the court under this practice is therefore in favor of petitioner's contention, and the amount claimed is allowed him. Such was the ruling of late First Comptroller Durham, who in December, 1887, caused to be prepared a printed form for clerks' fee bills, containing this charge, among others, "Swearing ——— jurors on voir dire, at 10 cents, $———," where the words "voir dire" were evidently used by him in the popular sense in which the petitioner has used it here and in his accounts.

The items 10 and 11 of the above schedule were passed upon in Taylor v. U. S., 45 Fed. Rep. 531, 535, 536, 539, before quoted, where Judge Jackson, lately one of the circuit judges of this circuit, and now one of the justices of the supreme court of the United States, considered the right of clerks to such fees. What was said in that case about the practice of the federal courts at Knoxville is equally true of our practice here; and the rulings made by that learned judge, and his conclusions, will be followed here, as there can be no question of their correctness. To the same effect is Van Duzee v. U. S., 48 Fed. Rep. 643, 645, 646, affirmed on appeal in 52 Fed. Rep. 930, 3 C. C. A. 361. These amounts are therefore allowed.

There was disallowed petitioner in one of his 20 accounts as clerk, involved here, (Schedule 12, above,) the small sum of $8.45 for making reports. The fee was charged at 15 cents per folio, under the statute giving clerks, "for * * * making any record, certificate, return, or report, for each folio, fifteen cents." Rev. St. § 828. It was his duty, under the statute, to make the reports, the provision being as follows:

"Every clerk of a circuit or district court shall, within thirty days after the adjournment of each term thereof, forward to the solicitor of the treasury a list of all judgments and decrees to which the United States are parties, which have been entered in said court, respectively, during such term, showing the amount adjudged or decreed in each case for or against the United States, and the term to which execution thereon will be returnable." Rev. St. § 797.

—Which was amended by section 2 of the act of congress of March 1, 1879, (20 Stat. 327,) by requiring of him, quarterly, to "report to the commissioner of internal revenue" detailed accounts of moneys paid into court, showing "the name and nature of each case; the date of payment into court; the amount paid on account of debt, tax, or penalty; and also the amount on account of costs," and his disposition of the same. And, by the printed treasury regulations, "where a suit is commenced in behalf of the United States in any district or circuit court, the clerk of such court will promptly report the fact, the time of the commencement, the character of the action, and the parties thereto;" and, by another such regulation, similar reports are required "respecting post-office cases." The law has thus imposed the duty upon the clerk to make these reports, and fixed the compensation therefor; and, having made them, petitioner is entitled to the statutory fees.

Per diem fees for attendance (Schedule 13) were refused in his account on the supposition that the clerk did not attend the circuit court here on two days in 1887. The records show the court was in session on the two days in question, that he was present, and that action of the court was had in civil suits on both days; and he is entitled to "five dollars a day for his attendance on the court while actually in session." Rev. St. § 828.

In the two small items (Schedule 14) all the fees in two cases were disallowed because petitioner's account did not more particularly describe the nature of the suits. One was a criminal case for a violation of the internal revenue laws, in which the trial resulted in an acquittal, and the other was an action at law to recover of the owner of a certain steamboat the amount due the government, under the law, for its inspection, and the United States, being unable to procure service of process on the defendant, dismissed the suit after several terms. The amount here claimed is allowed, as the services were rendered as claimed. The records of this court show these facts.

Schedules 15, 16, and 17, supra, are fees for services rendered by the clerk in and about the appointment by the court of election supervisors at three congressional elections, and embrace items amounting to $32.45 for entering orders of court pertaining to their appointments, charged at the statutory rate of 15 cents per folio, (Rev. St. §§ 828, 2011–2015, 2025,) and $82.60 for drafting their official oaths, under the express direction of the court to do so, entered on the minutes of the court at the times of their respective appointments, the fees therefor being charged strictly under the statute, and also the sum of $319.70 for issuing their commissions, also prepared by petitioner as clerk of the circuit court and issued under its seal, by direction of the court, in every instance, as its records show. No charge is included in said amount for attaching or impressing the court seal upon these commissions. Concerning fees for entering the orders of court appointing these election supervisors, there cannot be the slightest question; and the right to the statutory compensation of 15 cents

per·folio from the United States for preparing their official oaths has been affirmatively ruled by the supreme court in U. S. v. Mc-Dermott, 140 U. S. 151--153, 11 Sup. Ct. Rep. 746, because "it appears to have been the intention of congress that the supervisors should take an oath, which should be reduced to writing, and filed with the chief supervisor," and the expense of these oaths was not held to be chargeable to the supervisors, as in case of court officers, (U. S. v. Van Duzee, supra,) "in consideration of the number of such supervisors, their short tenure of office, and presumed inexperience in the drawing of legal documents, and of the desirableness of securing uniformity in the oaths so administered."

Section 2012, Rev. St., provides for the supervisor's commissions, and is as follows: "The court, when so opened by the judge, shall proceed to appoint, and commission, from day to day, and from time to time, and under the hand of the judge, and under the seal of the court," the election supervisors authorized by the statute. The clerk is entitled to a fee of $1 "for issuing and entering every process, commission," etc. Rev. St. § 828. The petitioner, in his accounts, charged $1 each for issuing these commissions, and 20 cents for affixing the court seal. In his first account the entire amount charged was disallowed by the accounting officers; in the next, the entire amount so charged was allowed; and, in the last, only the fee for seals was allowed,—while, in an account subsequent to this petition, the $1 fee for issuing the commission was allowed, that for the seal being disallowed; so that every possible ruling has been made at the treasury that could be made upon this point. The present rulings at the department, however, are in accordance with the amount claimed here, so that there is now really no controversy concerning the items, and they are accordingly allowed. U. S. v. Ewing, 140 U. S. 142, 147, 11 Sup. Ct. Rep. 743; U. S. v. Barber, 140 U. S. 164, 166, 11 Sup. Ct. Rep. 749.

The next item (Schedule 18) is for making certified transcripts in criminal cases, at the instance and request of the district attorney, to be sent to a penitentiary outside the state, where the defendants therein were undergoing sentence of imprisonment at hard labor, imposed by this court. The transcripts were procured for use as evidence by the United States against said defendants, to prevent their discharge under writs of habeas corpus, as shown by the clerk's duplicate accounts on file. The fees are charged at the statutory rate "for a copy of any record or entry, or of any paper on file, for each folio, ten cents." Rev. St. § 828. The services having been thus rendered for the United States, and upon its proper request, "the government is in no position to repudiate" the service; and the fees therefor, amounting to the sum of $42, are therefore allowed petitioner. U. S. v. McDermott, 140 U. S. 151, 156--158, 11 Sup. Ct. Rep. 746.

The small clerical error of $9.50 made in the department statement upon one of the clerk's accounts against him is perfectly apparent upon its face, and is, of course, allowed him here.

This only leaves remaining an item of $134.40, deducted from plaintiff's emoluments as clerk of the district court in his first account, which contained no per diem fees, though his account as clerk of the circuit court contained such fees for attendance for 72 days, covered by the same period, at $5 a day. Just two-thirds of these fees, or $240, was transferred by Mr. Durham, then first comptroller, from plaintiff's circuit to his district account, making the excess of his emoluments as clerk of the latter court this sum of $134.40, by charging against him all fees which had been disallowed. Both courts were in session those days. A statutory allowance is prescribed for the clerk, of "five dollars a day for his attendance on the court while actually in session." Rev. St. § 828. "And, when the circuit and district courts sit at the same time, no greater per diem or other allowance shall be made to any such officer than for an attendance on one court." Rev. St. § 831. And "no clerk of a district court, or clerk of a circuit court, shall be allowed by the attorney general ° * * to retain, of the fees and emoluments of his office, or, in case both of the said clerkships are held by the same person, of the fees and emoluments of the said offices, respectively, for his personal compensation * * * a sum exceeding three thousand five hundred dollars a year for any such district clerk, or for any such circuit clerk, or exceeding that rate for any time less than a year." Rev. St. § 839. All these provisions were compiled from the original fee-bill act of congress, of February 26, 1853, c. 80. From the date of this original enactment to 1885, a period of over 30 years, "the accounting officers of the treasury department construed the statutes as authorizing the clerk to charge such per diem for attendance as he might elect, when both courts were in session on the same day; and, upon such construction and interpretation of the statutes, it had been the practice to adjust and allow such accounts." Butler v. U. S., 23 Ct. Cl. 162, 163. The novel ruling of the comptroller in Butler's Case was identical with his ruling here, and the decision of the court of claims was against it, saying, "We conclude that the previous rulings of the department, to which, we are informed, it has returned since this controversy arose, were correct," and judgment was rendered for plaintiff. Id., 166. This case was decided in February, 1888, and in April of the same year the identical question was presented to Judge (now Mr. Justice) Brewer for decision in Goodrich v. U. S., 35 Fed. Rep. 193, who, in arriving at the same conclusion in his opinion, says:

The clerk "was entitled to the per diem in the court in which he charged it. Congress has so enacted. How can he be deprived of that by reason of the fact that he might be also entitled to a per diem in another court? Suppose a party is subpoenaed in two cases tried on the same day, and the law prohibits more than one witness fee on the same day. Might he not exercise the right of demanding his fee in the case where the solvency of the parties would secure its payment, and could such parties insist that it be charged in the other case, in which, perhaps, the insolvency of the parties would prevent his receiving any pay? Or suppose the per diems in the two courts were different. If he attends both courts, would he not be entitled to charge the larger per diem, rather than the less? In other words, may he not

insist upon anything that the statute gives him, and can the fact that he might have made another charge on another account be pleaded as a defense to a legal charge on the one account? While it is true that the government ought not to pay any more fees than congress has determined that it should pay, yet I think an officer may avail himself of everything the statute gives him, and that, where there are two charges possible, he is not bound to take the least valuable." Id. 195, 196.

In view of these decisions, and of the present ruling at the department, which really removes all controversy upon this item between the parties here, (for, except in this single instance, there has been no such action taken by the accounting officers upon petitioner's accounts, as the record of this case shows,) and of the unquestioned uniformity of decision for 40 years at the treasury, with an exception of but one comptroller, adhered to only during a portion of his official term, and of the earlier rulings made contemporaneously with the original act of 1853, and for so long followed almost without interruption, (U. S. v. McDermott, 140 U. S. 151, 154, 11 Sup. Ct. Rep. 746,) as well as upon principle, and a proper construction of the statute, our holding is that, the clerk having legally charged his per diem fees for attendance upon one court, the comptroller has no authority, under the statute, to disallow them, no matter for what purpose, nor whether, by any further action, he at the same time allows like per diems for attendance in the other court, in which they were not claimed, nor proven in accordance with the statute, nor at all, nor approved by any court. Rev. St. § 846; Act Feb. 22, 1875, (18 Stat. 333; 1 Supp. Rev. St., 2d Ed., p. 65.) The comptroller did not claim to have the power, arbitrarily, to simply disallow these fees; but he went further, and arbitrarily allowed a like amount, not claimed nor proven, nor passed upon by the court. Both actions were erroneous, beyond question, and the amount, in this regard, claimed by petitioner, is allowed him, accordingly. Therefore, let a judgment be entered for the petitioner in this cause, for the amount to which he is entitled under this opinion, and for costs.

Decree accordingly.