MacCormick et al. *v.* Molinari et al.

Appeal from the District Court of Guayama.

No. 492.—Decided May 25, 1910.

Survey and Demarcation of a Rural Estate—Confusion of Boundaries—Proper Procedure.—In a case like the one at bar where the plaintiffs do not claim the possession, title of, or interest in, the estate of the defendants whose boundaries are confused with those of the plaintiffs, and the survey which the latter request is not for the ascertainment, enforcement or protection of such rights, section 286 of the Code of Civil Procedure is not applicable, the course to be pursued being the institution of an ordinary action under the proper procedure.

Id.—Section 286 of the Code of Civil Procedure—Purpose of the Legislator.—From a perusal of section 286 of the Code of Civil Procedure it is to be deduced that the purpose of the legislator was to place any person in a position to examine and even survey the real property of another to which he may believe himself entitled, after securing private permission or, failing this, an order from the court, for the purpose of acquiring exact and indispensable data to permit him to exercise successfully an action for the ascertainment or protection of his rights, or to successfully prosecute the action brought to this end, since the first paragraph of said section provides that the order for the examination or survey may be applied for, whether or not there is any litigation pending as to the rights in controversy.

The facts are stated in the opinion.

*Mr. Rafael López Landrón* for appellants.

*Mr. Luis Muñoz Morales* for respondent.

Mr. Chief Justice Hernández delivered the opinion of the court.

On March 8 of last year (1909), Juan Carlos MacCormick Hartmann, with his legitimate wife, Avelina Murdock Cora, Enrique MacCormick Hartmann, and the estate of the deceased Guillermo MacCormick Hartmann, consisting of his wife, Sara Noble, and his minor children named Josefa Adela and Gloria Ethelnerga MacCormick Noble, filed a complaint in the District Court of Guayama against Rufina Molinari Sánchez, Enriqueta Díaz Anés, María Hortensia Díaz Molinari, and María Esperanza Díaz Molinari, accompanied by their respective husbands, Manuel Cividanes, Fernando Calimano, Antonio Argüellas, and Manuel Texidor, and against the Estate of Concepción Díaz Fraticelli de Palés, consisting of her husband, Domingo Palés, and his children named Mercedes Palés y Díaz de Albertini, Lucila, Rafael, Luisa, Enriqueta, Eduardo, and Jesús Palés, alleging in support thereof the following fundamental facts:

1. That the plaintiffs are the owners and legitimate possessors of two adjoining estates named "Reunión" and "Cayures," both of them situated in *barrio* "Jobos," within the municipal district of Guayama, with the area and metes and bounds described in the complaint.

2. That the defendants named are the coowners or sole possessors of another estate called "Merced," likewise situated in *barrio* "Jobos," within the municipal district of Guayama, the area and metes and bounds of which are also described in the complaint.

3. That the adjacent estates of the plaintiffs and that of the defendants adjoin each other, the boundaries thereof, being confused, having disappeared, or been forgotten or unknown through natural causes, fortuitous accidents, or voluntary acts on the part of some persons.

4. That the persons interested in the adjoining estates have not been able to reach a private definite agreement in order to put an end to the innumerable inconveniences and prejudices due to such confusion of boundaries.

The complaint closes with the prayer that final judgment be rendered directing the following:

1. The survey and demarcation of estates "Reunión" and "Cayures" belonging to the plaintiffs, with the citation of the adjoining owners.

2. That the survey and demarcation be made in accordance with the titles of each owner, and in the absence of sufficient titles, in accordance with the possession of the adjoining owners.

3. That along the boundaries or division lines between estates "Reunión" and "Cayures" on the one hand, and "Merced" on the other, the plaintiffs have a right to fence in their property by means of walls, ditches, hedges, live or dead, or in any other manner, placing the proper marks in a visible, permanent, and unalterable manner.

4. That with regard to the dividing line or lines between estates "Reunión" and "Cayures" and "Merced," that they be determined, established and fixed, taking into consideration old marks, posts, and signs which each farmer may have fixed.

5. That the litigant opposing the complaint pay the costs and expenses.

In answering the complaint María Esperanza Díaz Molinari acquiesced in the demand of the plaintiffs, setting forth that it was the first time she had heard of it, and prayed that she be held to agree to the survey requested, without any costs being taxed against her.

The defendant, Enriqueta Díaz Anés, accompanied by her husband, Fernando Calimano, answered that she agreed to the petition in the complaint as to the survey and demarcation of the estates referred to in the same, with respect to her interest therein, adding that had she previously had notice

of the demand of the plaintiffs she would have acquiesced therein, without the necessity of a judicial action, for which reason she prayed that she be held to have acquiesced, without costs.

The defendants, Domingo Palés, Luisa María Palés de Bernardini, Mercedes, Rafael, and Eduardo Palés Díaz, and Lucila, Enriqueta, and Jesús María Palés Díaz, the last three being minors and represented by their legitimate father, Domingo Palés, alleged in their answer that they did not and never had opposed the plaintiffs in making the survey and demarcation of the estates belonging to them, the complaint to which they made answer being the first notice that they had, as to the claim of the plaintiffs; but they understand that the proceedings instituted are not the proper proceedings inasmuch as an ordinary declaratory action had been availed of instead of the proceedings prescribed for cases of this character by section 286 of the Code of Civil Procedure, for which reason they prayed the court that, if it so held, it be pleased to dismiss the complaint, with the costs against the plaintiffs, or otherwise render judgment in accordance with the petition of the complaint, but reserving their rights as coowners of the estate "Mercedes."

The defendant, Rufina Molinari, alleged in her answer that she opposed the complaint in every respect because it does not conform to the procedure established, for cases of survey, by section 286 of the Code of Civil Procedure, and that without prejudice to such opposition, she accepts as true the facts alleged in the complaint and does not object to the plaintiffs making the survey and demarcation of their property and fencing the same, wherefore she prays that the complaint be dismissed on the ground that the proceedings are not proper, with the costs against the plaintiffs; and, if this prayer is not granted, that the survey be permitted in the manner requested, reserving her right of possession, without any special taxation of costs.

María Hortensia Díaz and her husband, Antonio Argüellas, absent and residing in the city of Oviedo (Spain), were summoned by publication, and, having failed to appear, their default was entered.

Upon holding the trial on the day set therefor, November 26, 1909, the court rendered the following judgment: ·

"To-day, the 26th of November, 1909, being the day set for the hearing of this suit, the plaintiff appeared by his counsel, Mr. López Landrón, and the defendants by their counsel, Messrs. Muñoz Morales, Texidor and Bernardini. Whereupon the complainant reproduced his complaint and requested from the court that he be allowed to amend the first title of said complaint, adding thereto the name of Enrique MacCormick, to which motion the attorney for the opposite party objected, and then the court, after considering section 140 of the Code of Civil Procedure and the cases of *Acquittal et al.* v. *Crowell et al.*, 1 Cal., 191; *Polk and Hanley* v. *Coffin and Swain,* 9 Cal., 56, granted the authorization prayed for by the plaintiff to make the proposed amendment. Whereupon the oral and written evidence of the plaintiff was introduced, and the defendants filed their answer to the complaint. In this case the attorney, Muñoz Morales, assisted by the other counsel for the defendants, made a motion for the dismissal of this suit for the reasons orally stated; the adverse party made objection to the motion, and the court, after hearing the motion and the objection of the plaintiff, is of the opinion that the proceeding resorted to by the plaintiff to obtain the establishment of boundaries and landmarks of the properties referred to in the complaint is not the proper one in cases of this kind, which must conform to the requirements of section 286 of the Code of Civil Procedure. It does not appear from the face of the complaint that the defendants have refused to authorize the fixing of the boundaries prayed for, and from the face of the answer it appears that they agree with the petition made by the defendant. Up to this stage there is no controversy about the matter. We are trying an action where no issues are joined, without any controverted facts which may warrant a judicial order. If the defendants have not refused to authorize the fixing of the boundaries, they should not have been brought to court, and in case they make any refusal, then proceedings may be instituted in accordance with our Law of Civil Procedure. For the reasons aforesaid, the court, considering that the proceeding is not the proper one, orders the dismissal of this suit, with costs against the plaintiffs."

The plaintiffs took an appeal from said judgment to this Supreme Court.

We understand that section 286 of the Code of Civil Procedure, which has been invoked by the lower court in its decision, is not applicable to this case.

The first paragraph of this section provides in substance that any person having a *bona fide* claim to the possession, title of, or interest in, any real property or mining claim which is in the possession of another may privately ask the latter for permission to make an examination or survey of his property, if it were necessary to ascertain, enforce or protect such rights, and if the person so in possession thereof fails or refuses for three days after demand in writing is made upon him, to permit such a survey or examination to be made, the party desiring the same may apply to the court or judge thereof, whether he has an action concerning such property pending in such court or not, for an order for such examination and survey.

The plaintiffs in this case do not claim the possession, title of, or interest in the estate of the defendants, "Merced," and the survey which they request is not for the ascertainment, enforcement, or protection of such rights, and, therefore, there is no reason for the application of section 286.

The second paragraph of said section provides the formalities to be observed in making the petition for the order of examination or survey, which formalities include the description of the property in which the party is interested, and the statement that the property in question is in the possession of another party, who must be named.

It does not appear from the complaint that the property of the plaintiffs is in the possession of the defendants, and we see no reason for compelling the former to make a petition for survey in the manner prescribed by law.

The third paragraph determines the procedure to be observed in the hearing on the petition for the examination or survey.

Paragraphs 4, 5 and 6 contain provisions relating to the issue of the order for the examination, survey and other investigations which the court may deem just, to the powers of the court with respect to the execution of works sought to be made and the bond to be furnished to answer for the damages which may be caused the adverse party by reason of such works.

From a perusal of section 286, it is to be deduced that the purpose of the legislator was to place any person in a position to examine and even survey the real property of another to which he may believe himself entitled, after securing private permission or, failing this, an order from the court, for the purpose of acquiring exact and indispensable data to permit him to exercise successfully an action for the ascertainment or protection of his right or to successfully prosecute the action brought to this end, since the first paragraph of said section provides that the order for the examination or survey may be applied for whether or not there is any litigation pending as to the rights in controversy.

It is alleged in the complaint that the plaintiffs and the defendants have not been able to reach a private and definite agreement to put an end to the innumerable inconveniences and prejudices caused by the confusion of boundaries, and this agreement cannot be other than the agreement of all persons interested in the determination of the common dividing limits, for which reason it cannot be affirmed that it does not appear on the face of the complaint that the defendants had refused to authorize the survey applied for in the complaint.

The defendants have not acquiesced in absolute terms to all the claims of the complaint, because one of them is absent and in default, and others have prayed, in the first place, that it be held that the proceeding initiated is not the proper and adequate proceeding for the ends sought.

Under these circumstances the case should not be dismissed, but the action should be prosecuted under the ordi-

nary procedure until judgment deciding the rights of the parties is rendered.

· For the foregoing reasons, we are of the opinion that the judgment appealed from should be reversed and the judge ordered to continue the proceedings until final judgment is rendered.

*Reversed.*

Justices Wolf and del Toro concurred.

Mr. Justice MacLeary dissented.

Mr. Justice Figueras did not sit at the hearing of this case.

DISSENTING OPINION FILED BY MR. JUSTICE MACLEARY.

Finding myself unable to agree with the views of my colleagues, as expressed in the opinion of the majority heretofore delivered, I consider the matters involved in the decision of this case of sufficient importance to give my reasons for dissenting, in the form of a written opinion.

· The appellants filed their complaint in this case in the District Court of Guayama alleging as fundamental facts, that they and the respondents, respectively, are owners of two agricultural estates which are contiguous at some points and having their boundaries confused, that the parties interested in such adjacent properties, have not come to any definite private agreement in order to avoid such confusion in the boundaries; and they pray the court to render a judgment ordering the demarcation and the setting of the landmarks on the lines of the estate of said plaintiffs, and the fixing of bounds and marks on the side which is contiguous with the property of the respondents. This suit was instituted and prosecuted as an ordinary civil action, the defendants being summoned in the usual manner prescribed by the law. Some of the defendants were cited by personal service and some by publication. All of them answered except one and judgment by default was taken against him.

Some of the defendants in their answers admitted as true the facts set forth in the complaint, but requested that the suit should be dismissed for the reason that plaintiff had not used therein the proper proceeding which is deemed to be expressly pointed out by the statute law in such cases.

At the hearing in the trial court the defendants argued the question of procedure, as a preliminary proposition, and in the same manner as if raised on demurrer, the court deciding that the complaint should be dismissed as it was not in accord with the proper procedure. Said resolution dismissing the complaint reads as follows: ·· ·

"No. 912.—*Juan MacCormick* v. *Rufina Molinari and others.* Fixing of boundaries and placing of landmarks. To-day, the 26th of November, 1909, being the day set for the hearing of this suit, the· plaintiff appeared by his counsel, Mr. López Landrón, and the defendants by their counsel, Messrs. Muñoz Morales, Texidor and Bernardini. Whereupon the complainant reproduced his complaint and requested from the court that he be allowed to amend the first title of said complaint, adding thereto the name of Enrique MacCormick, to which motion the attorney for the opposite party objected, and then the court after considering section 140 of the Code of Civil Procedure and the cases of *Acquital et al.* v. *Crowell et al.,* 1 Cal., 191; *Polk and Hensley* v. *Coffin and Swain,* 9 Cal., 56, granted the authorization prayed for by the plaintiff to make the proposed amendment. Whereupon the oral and written evidence of the plaintiff was introduced, and the defendants filed their answer to the complaint. In this case the attorney, Muñoz Morales, assisted by the other counsel for the defendants, made a motion to the court for the dismissal of this suit for the reasons orally stated; the adverse party made objection to the motion, and the court, after hearing the motion and the objection of the plaintiff, is of the opinion that the proceeding resorted to by the plaintiff to obtain the establishment of boundaries and placing of landmarks of the properties referred to in the complaint is not the proper one in cases of this kind, which must conform to the requirements of section 286 of the Code of Civil Procedure. It does not appear from the face of the complaint that the defendants have refused to authorize the fixing of the boundaries prayed for, and from the face of the answer it appears that they agree with the petition made by the defendant. Up to this stage there is no controversy

about the matter.    We are trying an action where no issues are joined, without any controverted facts which may warrant a judicial order. If the defendants have not refused to authorize the fixing of the boundaries they should not have been brought to court, and in case they make any refusal, then proceedings may be instituted in accordance with our Law of Civil Procedure.    For the reasons aforesaid, the court considering that the proceeding is not the proper one, orders the dismissal of this suit, with costs against the plaintiffs.''

The plaintiffs having failed to recover the judgment sought, took an appeal and filed herein a transcript bringing the decision of the district court before us for review.

The case being thus presented to this court, on appeal, the appellant contends that the district court committed an error of fact in asserting that, from the face of the complaint, it does not appear that the defendants have refused to authorize the fixing of the boundaries; and also, that an error of law was committed by the court in holding that the proceedings should have followed the requirements of section 286 of the Code of Civil Procedure.

The appellees now object to the allegations of the appellants and allege that the judgment should be affirmed for the reason that the proceeding used by the plaintiffs is not the proper one in such an action; and because the judgment, which was announced without hearing the case, is properly rendered in accordance with the law.

For a clearer understanding of the questions raised by the respective parties on this appeal it is perhaps better to copy in full the several sections from the Codes, under which it is claimed that this proceeding should have been instituted and conducted.    Sections 392, 393 and 394 of the Civil Code read as follows:

''Sec. 392.—Every owner has the right to demand the fixing of the boundaries of his property, giving notice thereof to the owners of adjoining tenements.

''The same privilege belongs to those having real rights.''

"Sec. 393.—The fixing of boundaries shall be in accordance with the titles of each owner, and, in default of sufficient titles, from what may appear from the possession held by the contiguous owners."

"Sec. 394.—When the titles do not specify the boundaries or area belonging to each owner and the question cannot be determined by possession or by other means of proof, the part of the land remaining in excess after the fixing of the boundaries shall belong to The People of Porto Rico."

The sections 282, 283, 284, 285 and 286 of the Code of Civil Procedure read as follows:

"Sec. 282.—An action may be brought by any person against another who claims an estate or interest in real property adverse to him, for the purpose of determining such adverse claim."

"Sec. 283.—If the defendant in such action disclaim in his answer any interest or estate in the property, or suffer judgment to be taken against him without answer, the plaintiff cannot recover costs."

"Sec. 284.—In an action for the recovery of real property, where the plaintiff shows a right to recover at the time the action was commenced, but it appears that his right has terminated during the pendency of the action, the verdict and judgment must be according to the facts, and the plaintiff may recover damages for withholding the property."

"Sec. 285.—When damages are claimed for withholding the property recovered, upon which permanent improvements have been made by a defendant, or those under whom he claims, holding under color of title adversely to the claim of the plaintiff, in good faith, the value of such improvements must be allowed as a set-off against such damages."

"Sec. 286.—Any person having a *bona fide* claim to the possession, title of, or interest in any real property or mining claim, including any ledges thereof, which is, or which he has good reason to believe is, in the possession of another, either by surface or underground holdings or workings, and it is necessary for the ascertainment, enforcement, or protection of such rights or interests that an examination or survey of such property be had, and the person so in the possession thereof fails or refuses for three days after demand on him made in writing, to permit such examination or survey to be made, the party desiring the same may apply to the court or the judge thereof, whether he has an action concerning such property, pending in such court or not, for an order for such examination and survey.

"Such examination must be made upon written petition or statement under oath, setting out a description of the property, interest of the party therein, that the premises are in possession of a party, naming him, the reason why such survey or examination is asked, the demand made for the same, and the refusal thereof.

"The court or judge must appoint a time and place for the hearing, of which notice, with a copy of the petition must be served upon the adverse party, at least three days before a hearing, and one additional day for each twenty-five miles between the place of service of notice and the hearing, and such hearing must be had and the testimony must be produced in the same manner as provided for hearings on injunctions.

"If upon such hearing, the court or judge is satisfied that either party is entitled to any relief or order for the examination or survey of any property in the possession of the other, which has by the papers in the proceedings been put in controversy, an order must be granted for such examination, survey and such other privileges as the court or judge may deem just, and the order must specify as nearly as possible what the person in whose favor such order is granted may do."

A comparison can be now made of these statutes, and it can be seen which of them contains the law applicable to actions or proceedings brought to establish and define boundary lines between adjoining estates. I will discuss these matters more fully later on, in the course of this opinion.

In respect to the supposed error of fact in regard to the refusal of the defendants to authorize the fixing of the boundaries, it certainly does not appear from the complaint, or otherwise, that any of the defendants at any time refused to participate in a proper proceeding for fixing the boundaries of their respective estates. The appellants merely allege in their complaint that they and the defendants had not come to any agreement in regard thereto. It is not even alleged that any effort had ever been made to adjust any questions of disputed boundaries. Nor is it alleged that any request or demand was ever made upon the defendants, or any of them, to settle or define the boundary lines or allow the plaintiffs to do so. In order to present a matter to a court of justice for decision a controversy must appear to exist between

the plaintiff and defendant and this must appear from the allegations of the complaint. The court has properly construed the pleadings and is justified in the statement made on this point.

This alone would have been a sufficient reason to justify the trial court in dismissing the complaint. It clearly did not disclose a cause of action, and according to the plaintiffs' own allegations there was no ground for the institution of any suit or taking any judicial proceeding whatever against the defendants—that is to say, that the refusal of the defendants to adjust the boundaries by an amicable proceeding on agreement, under the statutes invoked by the appellants, was a condition precedent to the filing of a suit for that purpose; and not being alleged or shown, the action was premature.

It is asserted on behalf of the appellants herein, that, they do not claim the possession, title of, or interest in the plantations of the defendants and that their suit claiming a survey is not made to protect any such rights and for that reason section 286 of the Code of Civil Procedure does not apply. If this contention is correct then the plaintiffs should have remained out of court and settled their claims by private agreement. But they certainly claim that there is a ''confusion of boundaries,'' which necessarily implies that in some parts the lines as claimed by the defendants overlap the true lines and include within them portions of land belonging to the plaintiffs. In what other way could there be any ''confusion of boundaries'' of which the plaintiff would have a right to complain? This claim is too shadowy to form the basis for any objection to the judgment rendered by the court below. If it should be held that the complaint fails to show that any portion of the property belonging to the plaintiffs is in possession of some one or more of the defendants then the complaint was properly dismissed.

But I will go further into the questions raised below and insisted on in this court. Though it is merely a matter of procedure that arises herein, as it involves the question of ·

which Code shall be followed in boundary cases, the matter assumes an unusual importance.

Have the plaintiffs, then, who are here the appellants, followed the proper proceedings in this case or not? That is the principal question which is presented here for our consideration. Counsel for appellant maintains that sections 392, 393 and 394 of Chapter III, Title II of the Civil Code of Porto Rico, set forth the manner in which a party desiring to ascertain and mark the boundaries of his property should proceed in so doing, while the respondents contend that the proper proceedings are prescribed in sections 282 to 291, inclusive, of the Code of Civil Procedure.

It must be remembered that the Civil Code is a body of substantive law, setting forth the rights of individuals, and that the Code of Civil Procedure is a body of adjective law, prescribing the legal methods of enforcing the rights to which persons may deem themselves entitled. Both can coexist without conflicting with each other, and they do thus harmonize in this case. Persons who own adjoining lands and who wish to ascertain, define and mark the boundaries thereof, can ascertain their rights by reference to those sections of the Civil Code heretofore cited and also find the proper method of enforcing their rights by reference to the appropriate sections of the Code of Civil Procedure, which are also cited herein.

The difference between substantive and adjective law is clearly pointed out and defined by the distinguished lexicographer, Henry Campbell Black, in his concise and comprehensive dictionary now so well known to the legal profession. He gives the following definitions:

"*Substantive law.*—That part of the law which the courts are established to administer, as opposed to the rules according to which the substantive law itself is administered. That part of the law which creates, defines and regulates rights, as opposed to *adjective* or remedial law which prescribes the method of enforcing rights, or obtaining redress for their invasion." (Black's Law Dic., p. 1132.)

"*Adjective law.*—The aggregate of rules of procedure or practice. As opposed to that body of law which the courts are established to administer (called 'substantive law'), it means the rules according to which the substantive law is administered. That part of the law which provides a method for enforcing or maintaining rights, or obtaining redress for their invasion." (Black's Law Dic., p. 37.)

Then it is clear that when a person considers that he has a civil grievance which must be redressed in the courts, he must seek the provisions of the adjective law in order to determine which are the rules to be followed in pursuing his remedy. To determine the existence and extent of his rights and whether or not they have been infringed he must, of course, have recourse to the substantive law. Nothing can be clearer than the distinct provinces of these different Codes and it was clearly the intention of our Legislature to preserve this distinction and thus avoid any confusion between rights and remedies.

Our Civil Code, which was largely an adaptation of the old Spanish Civil Code, was passed on March 1, 1902, and the Code of Civil Procedure was passed on March 10, 1904, and took effect four months thereafter. If the Civil Code and the Code of Civil Procedure are in irreconcilable conflict on points of practice or procedure, then, without any repealing clause, the latter being the subsequent act, must be held to repeal the former which is the earlier statute. (*Henrietta Min. Co.* v. *Gardner,* 173 U. S., 123; *Ward* v. *Race Horse,* 163 U. S., 504; *United States* v. *Ewing,* 140 U. S., 142.)

Then the latter is the latest expression of the will of the Legislature and, in case there is any inconsistency or conflict, must govern. And as the express purpose of the enactment of a Code of Civil Procedure is and must be to prescribe rules of procedure or practice, in so far as any other previous law attempts to do the same thing it is modified or repealed to that extent.

Without express words of repeal a previous statute will be held to be modified by a subsequent one, if the latter was

plainly intended to cover the whole subject embraced by both, and to prescribe the only rules in respect to that subject that are to govern. (*Tracy* v. *Tuffly,* 134 U. S., 223; *U. S.* v. *Tynen,* 78 U. S., 88 and 95; *Cook Co. Nat. Bk.* v. *U. S.,* 107 U. S., 445; *Norris* v. *Crocker,* 54 U. S., 429; *Bartlett* v. *King,* 12 Mass., 537; *Com.* v. *Cooley,* 10 Pick., 36; *Com.* v. *Kimball,* 21 Pick., 376; *Pierpont* v. *Crouch,* 10 Cal., 315; *Sutherland Stat. Cons.,* pp. 207 and 208.)

Then if it was ever intended by sections 392, 393 and 394 of the Civil Code to lay down a procedure to be followed by our courts in instituting, hearing and deciding controversies between parties in civil cases, this statute is controlled, and annulled in that respect, by sections 282 to 291, inclusive, of the Code of Civil Procedure passed two years later. Both these statutes cannot stand as methods of procedure. The title of the later Code is "An Act to establish a Code of Civil Procedure in Porto Rico." (See p. 190 of Sess. Acts of 1904.) It repeals "all laws, royal decrees, orders, military orders, acts or parts of acts inconsistent or in conflict with this Code.'

The famous law dictionary of Bouvier, edited and revised by that distinguished Philadelphia lawyer, Francis Rawle, defines procedure so clearly that there need be no mistake in its meaning. The book says:

"*Procedure.*—The methods of conducting litigation and judicial proceedings.

"It might be termed, by way of illustration, the mechanism of the law, as distinguished from jurisprudence, which is the science of the law.

"The term is so broad in its signification that it is seldom employed in our books as a term of art. It includes in its meaning whatever is embraced by the three technical terms, 'pleading,' 'evidence' and 'practice.' And practice in this sense means those legal rules which direct the course of proceeding to bring parties into the court and the course of the court after they are brought in; and evidence as a part of procedure signifies those rules of law whereby we determine what testimony is to be admitted and what rejected in each case, and what

is the weight to be given to the testimony admitted. (Bish. Cr. Proc., sec. 2; 107 U. S., 231. See Ind. App., 95.)'' (2 Bouvier's Law Dic., p. 764.)

It was never intended by the framers of the Civil Code to interfere with the mechanism of the law, but to confine itself to jurisprudence and leave procedure to the Spanish Code of Civil Procedure which was in force in this Island until it was superseded by our present Code of Civil Procedure which was adopted from that of Idaho, the State in which its framer formerly resided.

Since July 1, 1904, the Code of Civil Procedure, which took effect on that day, and has been amended from time to time, has prescribed the sole method for enforcing rights and obtaining redress for their invasion in the courts of Porto Rico. There has been no need to refer to the Civil Code for such a purpose if there ever was, which in my opinion there was not, at any time in our history.

If by any reasonable construction two statutes seemingly conflicting can be made to stand together it is the duty of the courts in construing them to give effect to the provisions of each. (*U. S.* v. *Langston,* 118 U. S., 389.)

Of course it is incumbent on courts to harmonize two Codes of laws existing under the same government, if they can do so; and the only way to harmonize these sections, hereinbefore quoted and discussed, which may possibly be said to be apparently conflicting, is by holding the former to embody the substantive and the latter the adjective law. Both cannot stand together as controlling matters of procedure. When parties come into court they must follow the Code of Civil Procedure, in civil cases, for this is the will of the legislature. Then the construction which I have put upon these sections of the two Codes is justified by the well-known rules of construction and should prevail. To hold otherwise will lead to endless confusion and mar the symmetry and beauty of our codified law.

As the plaintiff failed to take the proper proceedings, as indicated in the order of the trial court, which is entirely approved by the writer, the judgment of the district court, rendered on November 26 last, from which this appeal is taken, should, in my humble opinion, have been in all things affirmed.