# UNITED STATES *v.* KNOX.

### APPEAL FROM THE COURT OF CLAIMS.

No. 1209. Submitted November 5, 1888. — Decided November 19, 1888.

The Court of Claims has jurisdiction to hear and determine a claim of a commissioner of a Circuit Court of the United States for keeping a docket and making entries therein in regard to parties charged with violations of the laws of the United States, which has been duly presented to the Circuit or District Court of the United States through the district attorney, and which the court has refused to act upon, although it may not have been presented at the Treasury Department and disallowed there; and the claimant is not obliged to resort to mandamus upon the Circuit Court for his remedy.

THE case is stated in the opinion of the court.

*Mr. Assistant Attorney General Howard* and *Mr. F. P. Dewees* for appellant.

*Mr. George A. King* for appellee.

MR. JUSTICE MILLER delivered the opinion of the court.

This is an appeal from the Court of Claims brought by the United States to reverse a judgment obtained by John F. Knox, the appellee, for the sum of $196 for services as a commissioner of the Circuit Court of the United States for the Northern District of Texas.

These services were the keeping of a docket and making entries therein in regard to parties brought before him charged with violations of the laws of the United States. Two objections were made in the court below, and are reproduced here, to the claimant's right to recover in the Court of Claims. The first of these is, that no approval or disapproval of the claim was made by the Circuit or District Court. This proposition is founded on the first section of the act of February 22, 1875, 18 Stat. 333, which reads as follows:

"That before any bill of costs shall be taxed by any judge or other officer, or any account payable out of the money of the United States shall be allowed by any officer of the Treasury, in favor of clerks, marshals, or district attorneys, the party claiming such account shall render the same, with the vouchers and items thereof, to a United States Circuit or District Court, and, in presence of the district attorney or his sworn assistant, whose presence shall be noted on the record, prove in open court, to the satisfaction of the court, by his own oath or that of other persons having knowledge of the facts, to be attached to such account, that the services therein charged have been actually and necessarily performed as therein stated; and that the disbursements charged have been fully paid in lawful money; and the court shall thereupon cause to be entered of record an order approving or disapproving the account, as may be according to law and just.

United States commissioners shall forward their accounts, duly verified by oath, to the district attorneys of their respective districts, by whom they shall be submitted for approval in open court, and the court shall pass upon the same in the manner aforesaid. Accounts and vouchers of clerks, marshals and district attorneys shall be made in duplicate, to be marked respectively 'original' and 'duplicate.' And it shall be the duty of the clerk to forward the original accounts and vouchers of the officers above specified, when approved, to the proper accounting officers of the Treasury, and to retain in his office the duplicates, where they shall be open to public inspection at all times. Nothing contained in this act shall be deemed in anywise to diminish or affect the right of revision of the accounts to which this act applies by the accounting officers of the Treasury, as exercised under the laws now in force."

It will be observed that this section makes a somewhat different provision as to the course to be pursued by clerks, marshals and district attorneys who have accounts against the government, and that which is to be taken by United States commissioners. The former shall render their accounts, with the vouchers and items thereof, to a United States Circuit or District Court, and in open court prove them in the presence of the district attorney or his sworn assistant, whose presence shall be noted on the record, "and the court shall thereupon cause to be entered of record an order approving or disapproving the account, as may be according to law and just." As to commissioners, it is provided that they "shall forward their accounts, duly verified by oath, to the district attorneys of their respective districts, by whom they shall be submitted for approval in open court, and the court shall pass upon the same in the manner aforesaid."

The same section also requires "that before any bill of costs shall be taxed by any judge or other officer, or any account payable out of the money of the United States shall be allowed by any officer of the Treasury" in favor of these parties, the proceedings just stated shall be had. It is also provided that "nothing contained in this act shall be deemed in anywise to diminish or affect the right of revision of the accounts to

which this act applies by the accounting officers of the Treasury, as exercised under the laws now in force."

The findings of fact, made by the court in this case, show that Knox did keep the docket and render the services charged in his petition, to the amount of $390, but the Court of Claims disallowed all but $196 of it, as being barred by the statute of limitations. That court also finds that the claimant made out and verified by oath his account of fees for keeping said docket, and that he sent it to the United States district attorney to be presented to the court. It further appears by correspondence between the claimant and the clerk of the court and the district attorney that the latter offered to present the account to the judge at Dallas, but that the judge refused to receive or approve it, suggesting that the district attorney had better call for the books and examine them himself, and see if the account was correct.

Soon after the claimant took his books to Waco, and left them with the district attorney for examination. That officer thereafter returned the books to him, and informed him that the judge would not act upon the account. There is a term of the District Court held at Dallas and another at Waco for the Northern District of Texas, and we take this statement of what occurred to amount to a presentation by the claimant of his account through the district attorney to the court, and an absolute refusal by the court to act upon the claim.

Section 846 of the Revised Statutes declares as follows: " The accounts of district attorneys, clerks, marshals, and commissioners of Circuit Courts shall be examined and certified by the district judge of the district for which they are appointed, before they are presented to the accounting officers. of the Treasury Department for settlement. They shall then be subject to revision upon their merits by said accounting officers, as in case of other public accounts."

It was decided in *United States* v. *Wallace,* 116 U. S. 398, that a United States commissioner who kept a docket, by direction of the court appointing him, and entered therein the proceedings in criminal cases heard and decided by him, is entitled to the same fees allowed to clerks of courts by § 828 of the Revised Statutes for the keeping of their dockets.

It is evident from the language of § 846, and that of the act of 1875, above cited, that the Treasury Department has a right to require some action by the district attorney and the court before it will allow or consider a claim in such a case as this.

The second objection made by counsel for the United States is that the claim should have been presented at the Treasury Department and have been disallowed by the accounting officers. This question was considered in *Clyde* v. *United States*, 13 Wall. 38, and we understand the court to have decided in substance that the action of the auditing department, either in allowing or rejecting such a claim, was not an essential prerequisite to the jurisdiction of the Court of Claims to hear it. In that case it appeared that the Court of Claims had refused to consider a claim against the United States, presented to it, because the claimant had not complied with a rule of that court which required that the party should have first gone to the department which might have entertained it before he was permitted to proceed in that tribunal. But this court held that such a rule was "an additional restriction to the exercise of jurisdiction by that court. It required the claimant to do what the acts giving the court jurisdiction did not require him to do, before it would assume jurisdiction of his case." The rule was, therefore, declared to be void, and the Court of Claims was directed to proceed with the consideration of the case.

The presentation, therefore, of the present case to the officers of the government charged with the auditing of such accounts in the Treasury Department was not necessary to give the Court of Claims jurisdiction, and it would have been a useless step because the statute expressly says that the court shall first "cause to be entered of record an order approving or disapproving the account, as may be according to law and just."

No provision is made for a refusal by the court to act upon a claim, and the most forcible argument now made on behalf of the government against the right of the Court of Claims to take jurisdiction of this case is that no such order was made by the Circuit or District Court, and that the proper remedy

for the claimant is a proceeding in mandamus to compel the Circuit Court to act upon the account.

We do not know what may have been the circumstances which induced that court to decline to act upon this claim, but we are not prepared to say that such a writ is the proper remedy for the claimant to resort to here. If there were no other this might be so, but the attempt to proceed by mandamus would raise the question, always a troublesome one, whether it is a part of the judicial function to take part in auditing the accounts against the government, or preparing them for submission to the auditing officers. But as we feel well assured that the claimant, who has done everything in his power to secure action upon his account by the district attorney and the court, and who has a just claim against the government for services rendered under the act of Congress, has a remedy in the Court of Claims, we do not see why he should be compelled first to resort to a writ of mandamus against the Circuit Court. This remedy, always an unusual one and out of the ordinary course of proceeding, would be attended in the case before us with delay and embarrassment. It is not by any means so efficient nor so speedy as an action in the Court of Claims. If he should succeed after trouble, delay and expense, in procuring action by the local court, which might be either an approval or a disapproval of his claim, he would still have to go to the auditing department, in which the action of the court is only advisory, or he might sue in the Court of Claims as shown in the case of *Clyde* v. *United States*, 13 Wall. *ubi supra*.

We are, therefore, of opinion that the Court of Claims had jurisdiction of the case, and its judgment is

*Affirmed.*