# DELAWARE, LACKAWANNA & WESTERN RAIL-ROAD COMPANY v. UNITED STATES.

## APPEAL FROM THE COURT OF CLAIMS.

No. 158. Argued March 26, 1919.—Decided April 14, 1919.

When the Court of Claims fails to state what the contract was between
the claimant and the Government, this court cannot find it from
facts which do not establish a contract as a matter of law. P. 387.

Where a railroad undertook transportation of mail during a certain
period upon notice from the Post Office Department that the com-
pensation had been fixed for the period at certain rates but "subject
to future orders," and "unless otherwise ordered," held, in view of
these qualifying words, that the contract did not guarantee the rail-
road against any change of the rates during that period. Id.
Eastern R. R. Co. v. United States, 129 U. S. 391.

A reservation of the right to change the rates for mail transportation
may be availed of by the United States through an act of Con-
gress, even though the Postmaster General had no authority when
the contract was made to change the rates himself. P. 388.

The Act of March 2, 1907, directing the Postmaster General to readjust
the compensation for the transportation of mail on certain railroad
routes carrying certain average weights of mail per day, did not re-
quire reweighing. Id.

51 Ct. Clms. 426, affirmed.

THE case is stated in the opinion.

*Mr. F. Carter Pope* and *Mr. Benjamin Carter* for appellant.

*Mr. Assistant Attorney General Frierson* for the United States.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a petition to recover additional pay for the carriage of the mails upon two routes from July 1, 1907, to July 1, 1909—the claimant alleging and the United States denying that it had contracts at fixed rates for four years from July 1, 1905. The Court of Claims, without stating in terms what the contracts were, set forth the transactions that fixed the relations of the parties, and rejected the claims. Under the statutes in force at the time a maximum price per mile was fixed with reference to the average weights carried by the railroad. This average was ascertained by weighing the mails for thirty days once in four years. The quadrennial weighing for the two routes concerned (from Hoboken to Buffalo and from Hoboken to Denville, New Jersey,) took place in the spring of 1905, upon a notice from the Post Office Department that it was in order to obtain the data for adjusting the pay from July 1, 1905, to June 30, 1909. At about the same time the Post Office Department in accordance with its practice sent to the Railroad a circular calling for a verified return of the distances on the routes and for an acceptance, as it was called, more properly an offer, in the following form:

"In case the Post Office Department authorizes the transportation of mails over this line, or any part of it, the railroad company agrees to accept and perform the service upon the conditions prescribed by law and the regulations of the Department."

Before July 1, 1905, these returns were executed, and on

September 15 the Post Office Department notified the Railroad that the compensation for transporting the mails on the Buffalo route "has been fixed from July 1, 1905, to June 30, 1909," upon returns, at certain sums. "This adjustment is subject to future orders and to fines and deductions, and is based on a service of not less than six round trips per week." The notice for the Denville route, sent September 16, 1905, was similar except that there was inserted after "has been fixed from July 1, 1905, to June 30, 1909," the words "unless otherwise ordered." There is nothing else bearing on the contracts except that the Post Office Regulations contemplate contracts for and not exceeding four years.

The rate thus fixed was paid for two years, but on September 12, 1907, in pursuance of an Act of Congress of March 2, 1907, c. 2513, 34 Stat. 1205, 1212, authorizing the Postmaster General to readjust the compensation to be paid after July 1 of that year, and to reduce the rate on certain average weights, he ordered the reduction complained of. The service was continued on an understanding that it was without prejudice to the rights of the Railroad in case it should be decided that it was entitled to the old rate for four years from July 1, 1905. The Court of Claims allowed the higher rate up to the time of the notice of the reduction but disallowed the rest, and the Railroad Company appealed.

It would be very difficult to say that the writings to which we have referred constituted a contract on the part of the Railroad to carry the mails for four years and on the part of the Government to accept the service for that time, even subject to the reservations that were expressed on its side. If in view of the circumstances and past practices a finding of such a contract was warranted no such finding has been made and this Court cannot make it. It is not a conclusion of law from the facts. But, however this may be, the notice to the Railroad that the

compensation has been fixed at certain rates, in one case "unless otherwise ordered" and in both "subject to future orders" excludes the possibility of holding that a change of rate could not be made so far as the written words were concerned. So it was decided in *Eastern R. R. Co. v. United States*, 129 U. S. 391, which answers the argument that the future orders referred to did not extend to a change of rates. In that case, to be sure, the railroad made no protest, but the decision was not placed upon that ground alone but also upon the effect of the words "unless otherwise ordered." It is said that the, Postmaster General had no power to change the rates in 1905 when the papers were signed. But that would not obliterate the reservation and bind the United States to a different contract from that which the documents expressed if they expressed anything more than the rate at which the service was rendered while it was rendered. The United States was free to adopt the reservation in its favor and it did adopt it by the Act of 1907. As the case stands, the Railroad was free, as in the *Eastern Railroad Case*, to decline to carry at the new rates, but could not insist upon the old ones after notice that they had been revised.

It is argued that the Act of 1907 could not be put into effect without a reweighing. The act directs the Postmaster General to readjust the compensation to be paid from and after the first day of July, 1907, for the transportation of mail on certain routes "by making the following changes in the present rates per mile per annum for the transportation of mail on such routes, and hereafter the rates on such routes shall be as follows: On routes carrying their whole length an average weight of mail per day of more than five thousand pounds and less than forty-eight thousand pounds the rate shall be five per centum less than the present rates on all weight carried in excess of five thousand pounds"; with further reductions arrived at in like manner. The references to

average weights are not enough to require reweighing. They are an enumeration of the elements identifying and determining the present rates that are to be reduced. We see no reason to suppose that Congress intended to require a special and expensive investigation at the cost of the Government rather than to adopt the existing practice and to order the reduction without reference to the exact time when the last thirty days' weighing occurred or should occur.

*Judgment affirmed.*