## NEW YORK, NEW HAVEN & HARTFORD RAILROAD COMPANY *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 74.   Argued May 2, 1919.—Decided December 8, 1919.

*Semble*, that under Rev. Stats., § 4002, as amended, the Postmaster General may fix the sums payable to a railroad company for transporting the mails upon the basis of weights taken immediately before the beginning of the four-year term of the contract, and that annual weighings are not required. P. 126.

A railroad company which knowingly contracts and receives on this basis less than it would have received on the basis of annual weighings has no implied contract right to be paid the difference by the United States. P. 127.

Prior to the Act of July 28, 1916, c. 261, 39 Stat. 429, a non-land-grant railroad was not required to carry the mails; and when it voluntarily accepted and performed the service with knowledge of what the United States intended to pay, it cannot claim more upon the ground that its property was taken. *Id.*

53 Ct. Clms. 222, affirmed.

THE case is stated in the opinion

*Mr. Edward G. Buckland* and *Mr. S. S. Ashbaugh*, with whom *Mr. Arthur P. Russell* was on the briefs, for appellant:

The claimant carried the mails during the period involved with the distinct declaration that it would not accept the amount of pay offered by the Postmaster General as full compensation for the services, which declaration in writing was acknowledged by the Postmaster General, the mails were then delivered for carriage, and the usual pay orders were issued thereon. That there was no agreement between the claimant and the Post Office Department as to the compensation for carrying the mails during the two quadrennial periods beginning July 1, 1909, and July 1, 1913, is clearly shown in the correspondence between the parties.

The offer of the claimant to perform the service must not be confused with its refusal to accept the compensation offered. This refusal placed the responsibility on the Postmaster General; if he delivered the mails for transportation they would be accepted only on the ground that the compensation was to be fixed by the courts.

When the Postmaster General sends out his distance circular to a railroad company in operation, calling upon it to fill out the circular and return it to him preparatory to carrying the mails, he has demanded performance of a governmental function, and this cannot be refused, but the railroad company may protect itself by filing a protest to the compensation offered and instituting an action in the proper court. In performing this governmental function in carrying the mails there is no difference between a land-grant and a non-land-grant ailroad. The obligation rests upon both alike.

Railroads became government agencies when they were made post roads by Congress, and are performing a governmental function when required by the Postmaster General to carry the mails. He may exercise a discretion

as to routes and kinds of service. The powers granted in § 3965 cannot, however, be defeated by a refusal of the railroad company to perform the service. The Act of July 28, 1916, 39 Stat. 429, 431, created no new obligations.

It is not following the law to weigh the mails before the quadrennial period begins, extend the weight into four years, divide it into four equal parts for the purpose of payment, and thus get a different and smaller amount as a basis than would be secured by an annual weighing. This is not giving "pay per mile per annum"; it is simply giving one-quarter of an incorrect quadrennial amount.

The claimant has not by performance waived any right to demand pay for the true weight of mail carried each year. The statute cannot be waived. This point is covered in the case of the *Union Pacific R. R. Co.* v. *United States*, 104 U. S. 666.

From and after January 1, 1913, the claimant carried each day an increased amount of mail furnished as parcel post packages, for which increased compensation can be recovered. The Parcel Post Law of August 24, 1912, took effect January 1, 1913, and by this means the amount of mail carried by the claimant was vastly increased. On the 4th of March, 1913, Congress provided that an increase of pay should be given, not exceeding 5 per cent. per annum. The full amount of this 5 per cent. was not given the claimant, according to the allegations in the petition, and this is held to be a violation of the statute in the case recently decided by the court below. *Atchison, Topeka & Santa Fe Ry. Co.* v. *United States*, 52 Ct. Clms. 338.

The mails on the claimant's lines were weighed in the fall of 1912, as of October 27th, and this weight taken for the quadrennial period beginning July 1, 1913. In the meantime the Parcel Post had been established, taking effect January 1, 1913, but no new weighing was had, and

this new and additional amount of mail was carried on the old weights.

Under the rules and regulations of the Post Office Department, the Postmaster General has required the claimant to gather and deliver mails at intermediate stations off from and beyond the right of way and at a distance not exceeding 80 rods. This is not authorized by law, and the claimant is entitled to recover the value of this service.

*Mr. Assistant Attorney General Brown* for the United States.

MR. JUSTICE McREYNOLDS delivered the opinion of the court.

Appellant sued the United States to recover the difference between amounts received through the Post Office Department and what it claims should have been paid for its services in carrying the mails during a series of years, ending June 30, 1914. The demand is based upon implied contracts alleged to arise from the following circumstances. First.—Acceptance and transportation of the mails in reliance upon § 4002, Rev. Stats., as amended. This directs payment of specified sums per mile per annum according to weights; and the claim is that because the Post Office Department improperly construed and applied it, appellant received much less than it should have. Second.—Acceptance and transportation of the mails under orders and coercion of the Post Office Department, followed by failure to allow reasonable compensation therefor. Appellant claims its property was taken for public use and adequate compensation must be paid.

Concerning the challenged interpretation and application of § 4002, Rev. Stats., resulting in payments during each four-year term upon the basis of weights taken

immediately prior to the beginning of the same instead of annually, it suffices to say that the action taken accords with prior practice followed for many years; the letter of the statute permits it; the carrier submitted with full knowledge; and, impliedly at least, it was sanctioned by this court in *Delaware, Lackawanna & Western R. R. Co. v. United States,* 249 U. S. 385.

We think it must be treated as settled doctrine that prior to the Act of July 28, 1916, c. 261, 39 Stat. 412, 429,—with the exception of certain roads aided by land grants—railroads were not required by law to carry the mails. *Eastern R. R. Co.* v. *United States,* 129 U. S. 391, 394; *Atchison, Topeka & Santa Fe Ry. Co.* v. *United States,* 225 U. S. 640, 650; *Delaware, Lackawanna & Western R. R. Co.* v. *United States, supra.* And as appellant voluntarily accepted and performed the service with knowledge of what the United States intended to pay, it cannot now claim an implied contract for a greater sum. It may be that any railroad by failing to carry the mails would incur the hostility of those living along its lines and as a consequence suffer serious financial losses; but the fear of such results certainly does not amount to compulsion by the United States and cannot constitute the basis of a justiciable claim against them for taking property.

The Court of Claims (53 Ct. Clms. 222) dismissed the petition upon demurrer, and its judgment is

*Affirmed.*

MR. JUSTICE BRANDEIS dissents.