# MISSOURI, KANSAS & TEXAS RAILWAY COMPANY *v.* UNITED STATES.

## APPEAL FROM THE COURT OF CLAIMS.

No. 52. Submitted April 26, 1921.—Decided June 6, 1921.

1. After a railroad company had entered into a contract to carry the mails with notice that it would be subject to all postal laws and regulations which were or might become applicable during the term of the service and that the adjustment of compensation based on weighings of the mails carried during 90 working days was subject to further orders, as well as fines and deductions, it discontinued an important train and thereby occasioned a diversion of part of the mails to other lines; the Post Office Department, upon the authority of the Act of August 24, 1912, c. 389, 37 Stat. 539, enacted after the contract was entered into, weighed the diverted mails for 21 days and readjusted the compensation accordingly. *Held,* that such readjustment did not violate the contract although it diminished the compensation, and in part retroactively. P. 613. *Delaware, Lackawanna & Western R. R. Co.* v. *United States,* 249 U. S. 385; *Mail Divisor Cases,* 251 U. S. 326.

2. The Act of 1912, *supra,* allows the readjustment to be made after a weighing of the diverted mails only, and the proviso (since repealed) that they must equal ten per cent "of the average daily

weight on any of the routes affected," refers to the average daily weight ascertained by the last previous general weighing, and means ten per cent, not upon all, but upon some one, of the routes affected. Pp. 614, 615.

3. The act also allows the readjustment to relate back to the first of July previous to the date of the act. P. 614.

53 Ct. Clms. 641, affirmed.

THE case is stated in the opinion.

*Mr. Alexander Britton* for appellant.

*Mr. Frank Davis, Jr., Mr. J. Robert Anderson* and *Mr. Joseph Stewart*, Special Assistants to the Attorney General, for the United States.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a claim for $9,429.92 additional pay for carrying mails between July 1, 1912, and July 1, 1914. The claimant had been transporting them under an adjustment of compensation that expired on June 30, 1910. In contemplation of the usual quadrennial readjustment by weighing, the Postmaster General sent to the claimant the customary form of Distance Circulars to be filled out and to be accompanied by the latest working schedules of trains operated over the routes concerned. The circular contained this clause: "The company named below agrees to accept and perform mail service upon the conditions prescribed by law and the regulations of the department applicable to Railroad Mail Service." The claimant signed the circular protesting against certain regulations, and was answered on June 30, 1910, that the department would not enter into contract with any railroad company by which it might be excepted from the operation or effect of any postal laws or regulations and that it must be understood that from the beginning of the contract term named

and during the continuance of the service the company would be "subject, as in the past, to all the postal laws and regulations which are now or may become applicable during the term of the service." In answer to a reply to this letter it was reiterated that it must be understood that the Company would be "subject, as in the past, to the usual customs and practices in relation to railroad mail service as well as to the conditions stated in my letter" of June 30, 1910. The weighings took place and on September 15, 1910, by a notice approved by the Postmaster General on September 22, the claimant was informed that the compensation for route No. 153010, (the route chiefly concerned), had been fixed from July 1, 1910, to June 30, 1914 "(unless otherwise ordered)" at certain sums, "upon returns showing the amount and character of the service," for the usual time—(ninety working days). The notice added "This adjustment is subject to future orders and to fines and deductions, and is based on a service of not less than six round trips per week." This correspondence is relied upon by the claimant as a contract fixing its pay for four years.

In 1906 the claimant had established a fast mail train from Parsons, Kansas, that connected with the Frisco System train No. 3, at Vinita, Oklahoma, with further connections that carried the mail to Houston, Galveston and San Antonio, Texas. It had guaranteed the maintenance of the service until July 1, 1910, and was maintaining it at the time of the readjustment in that year. Its return on the Distance Circular for route No. 153010 showed Vinita as a station where mails were put on and put off trains, and the adjustment showed allowances for mails from Parsons to Vinita and from Vinita to Texas. The claimant gave no notice that the fast train would be discontinued. Early in 1912, however, it was discontinued, the Postoffice Department protesting that it was a violation of contract, and being compelled thereby to

make other provisions for the mails concerned. Thereafter, on November 22, 1912, the Department ordered the mails diverted to other lines to be weighed for twenty-one days beginning on November 26, so far as such mails could be definitely identified, the mail not to be weighed in case of doubt—that provision of course being favorable to the road. The result was an order of February 21, 1913, approved by the Postmaster on March 1, 1913, by which the compensation on route No. 153010 was diminished by $10,914.04 a year, from July 1, 1912, and that of two other routes increased by $6,199.08. The claimant contending that the whole proceeding was illegal sues for the difference between the new and the old allowance for the two years when the new order was enforced.

The Government justifies the Department's course under the arrangement that we have recited, the previously existing law and the Act of August 24, 1912, c. 389, § 4, 37 Stat. 539, 554. "When, after a weighing of the mails for the purpose of readjusting the compensation for their transportation on a railroad route, mails are diverted therefrom or thereto, the Postmaster General may, in his discretion, ascertain the effect of such diversion by a weighing of such mails for such number of successive working days as he may determine, and have the weights stated and verified to him as in other cases, and readjust the compensation on the routes affected accordingly: *Provided,* That no readjustment shall be made unless the diverted mails equal at least ten per centum of the average daily weight on any of the routes affected: *Provided further,* That readjustment made hereunder shall not take effect before July first, nineteen hundred and twelve, and shall be for diversions occurring after January first, nineteen hundred and twelve." The claimant contends that it had a contract that could not be affected by this statute and that the statute was not followed in what was done.

The contention that the arrangement between the De-

partment and the claimant was a contract that the statute could not affect is sufficiently answered by *Delaware, Lackawanna & Western R. R. Co.* v. *United States,* 249 U. S. 385, and *The Mail Divisor Cases,* 251 U. S. 326, coupled with the express notice that the railroad would be "subject to all the postal laws and regulations which are now or may become applicable during the term of the service." Moreover it is an extravagant interpretation of the adjustment to suppose that the railroad could discontinue an important item of the services upon which the compensation was computed, and still demand the same pay.

The construction of the statute also seems to us to be tolerably plain upon the points mainly argued. The effect of the diversion of mails may be ascertained by "a weighing of such mails " (that is, very plainly, the diverted ones) for such number of days as the Postmaster General may determine. This is not a recurrence to the expensive quadrennial weighing for ninety days but a limited investigation for a limited purpose. The result of the last general weighing, which is sufficient to afford a satisfactory basis for payment, is accepted by the statute as a near enough basis for the ten per cent. test that it creates; the object of the test being merely to show that the diversion has been substantial. The ratio fixed had no other importance than to indicate a case for readjustment and was not necessary even for that, as was shown by the repeal of the proviso in a few years. Act of May 18, 1916, c. 126, § 5, 39 Stat. 159, 161.

The statute itself contemplates a readjustment in respect of past services, since it was not approved until August 24, 1912, and allows a readjustment from the first of the previous July. As the change in the pay is made in respect of a change that has occurred in the service by which the current pay was fixed, the railroad suffers no injustice, and, as we have said, by the terms of its arrangement it took the risk of such a statute being passed.

There is an ambiguity in the words "ten per centum on any of the routes affected." The railroad seems to have contended that they required the diverted mails to equal ten per cent. of the average daily weight on all of the routes affected. The Department construed them to mean that it was enough if the diversion amounted to the ten per cent. on any one of the routes. The first interpretation that occurs to a reader may be that the routes are considered separately and that no readjustment shall be made in respect of any route unless the diversion on the route equals ten per cent. But the routes mentioned are supposed to be all affected by the same diversion and therefore are considered collectively. If a readjustment is made as to one route it is reasonable to take into account the offsets on others arising from the same change. That being so there is a literal plausibility in the railroad's contention—but having in mind what we have suggested to be the only purpose of the require-ment, we are disposed to accept the construction adopted by the Department and the Court of Claims, that the statute denies a readjustment only if the diverted mails do not equal ten per cent. of the average daily weight upon any, that is, upon some one of the routes. If the proviso had meant them to amount to ten per cent. upon all the routes, "all" not "any" is the word that naturally would have been used.

*Judgment affirmed.*