## ST. LOUIS SOUTHWESTERN RAILWAY COMPANY *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 184. Argued March 6, 7, 1923.—Decided April 23, 1923.

1. Under the Act of March 4, 1913, c. 143, 37 Stat. 797, authorizing the Postmaster General to pay additional compensation, not exceeding five per cent., for transportation of mail on railroads on and after July 1, 1913, for the remainder of the contract terms,

on account of increased weight of mails resulting from the parcels post law, the decision of the Postmaster General upon the amount of compensation to be allowed within the limit fixed was conclusive; and a railroad company, which accepted payment, under protest, of amounts so fixed, cannot claim more from the Government upon the ground that they were inadequate.  P. 73.

2. Transportation of additional mail matter, resulting from the parcel post, even if not requirable under contracts existing when the parcel post system was adopted, did not give the transporting company a right to additional compensation, when it was done voluntarily during a period (January 1, 1913, to June 30, 1913) for which Congress has failed to allow such compensation.  Act of March 4, 1913, *supra*.  P. 73.

56 Ct. Clms. 64, affirmed.

APPEAL from a judgment of the Court of Claims dismissing the petition upon demurrer.

*Mr. Benjamin Carter* for appellant.

*Mr. Blackburn Esterline,* Assistant to the Solicitor General, with whom *Mr. W. Marvin Smith* was on the brief, for the United States.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

Prior to July 1, 1910, claimant entered into a contract with the Post Office Department to carry the mails over a part of its line for the period of four years from that date.  Prior to July 1, 1911, it entered into a like contract to carry the mails over another part of its lines.  These contracts were in form and substance similar to that involved in *New York, New Haven & Hartford R. R. Co.* v. *United States,* 258 U. S. 32, and other recent cases.[1]  By them the amount of compensation was fixed by a weighing prior to the date of the contract.  While the mails

---

[1] *United States* v. *Atchison, Topeka & Santa Fe Ry. Co.,* 249 U. S. 451; *New York, New Haven & Hartford R. R. Co.* v. *United States,* 251 U. S. 123; *The Mail Divisor Cases,* 251 U. S. 326.

were being carried by claimant under these contracts, the parcel post system was established pursuant to the Act of August 24, 1912, c. 389, § 8, 37 Stat. 539, 557–559. From the inauguration of the service, on January 1, 1913, to the end of the contract periods, claimant carried the parcel post together with the other mail. For rendering this service, during the first six months, no additional compensation has been paid claimant. For rendering it during the remainder of the contract periods, claimant received, under later legislation, sums in addition to the compensation provided by the contracts. These sums it deems inadequate. On February 1, 1919, this suit was brought to recover, as reasonable compensation for the service rendered, the several amounts which it insists should have been paid. The Government demurred to the petition. The Court of Claims dismissed it on the ground that there was neither a contract express or implied in fact, nor a law of Congress to support the claims for additional compensation. The case is here on appeal.

The Act of August 24, 1912, provided that the establishment of parcel post zones and postage rates should go into effect January 1, 1913. It increased the weight of fourth class mail matter from four to eleven pounds and the size to seventy-two inches in length and girth. It also authorized further increases of the weight limit, by order of the Postmaster General with the consent of the Interstate Commerce Commission. But that act, while it authorized the Postmaster General to " readjust the compensation of star route and screen wagon contractors if it should appear that as a result of the parcel post system the weight of the mails handled by them has been materially increased," made no provision whatsoever for increasing the pay of railroads because of carrying parcel post matter. Act of March 4, 1913, c. 143, 37 Stat. 791, 797, authorized the Postmaster General " to add to the compensation paid for transportation on railroad routes

on and after July 1, 1913, for the remainder of the contract terms" not exceeding five per cent. thereof per annum "on account of the increased weight of mails resulting from the enactment of" the parcel post provision of the preceding year. The Postmaster General allowed claimant, under this act on some routes the full five per cent.; on some less; on some nothing additional. But the latter act, also, contained no provision authorizing additional pay to the railroads for carrying parcel post matter from January 1, 1913, to June 30, 1913.

*First.* That no recovery can be had for the period after June 30, 1913, is clear. Before that date Congress had made express provision for the additional compensation and in so doing had limited the amount payable. The power to grant or to withhold was, within the limit set, vested in the Postmaster General; and his decision as to additional compensation was conclusive except upon Congress.[2] The protest alleged to have been made in August, 1913, against the amounts proposed to be paid for this period, cannot avail claimant, *New York, New Haven & Hartford R. R. Co.* v. *United States,* 251 U. S. 123.

*Second.* The first six months' period presents a different situation; but the legal result is the same. There is no claim of an express contract to pay additional compensation; nor is there any basis for a claim on a contract implied in fact. The petitioner alleges that the parcel post matter was radically different in character

---

[2] Some further compensation was in fact made after the expiration of the contracts, under later legislation. By Act of July 28, 1916, c. 261, 39 Stat. 412, 425 (passed after both contracts with claimant had expired), the Postmaster General was authorized to make an additional payment not exceeding one-half of one percentum per annum on account of the increased weight of mails resulting from his order effective August 15, 1913, raising the weight limit to twenty pounds and additional payment not exceeding one per cent. on account of the increased weight resulting from his order effective January 1, 1914, raising the weight limit to fifty pounds.

from the ordinary mails as constituted before January 1, 1913. It may be, that claimant might legally have refused, for this reason, to carry the parcel post mail under then existing contracts; even if additional compensation had been offered. Compare *United States* v. *Utah, Nevada & California Stage Co.,* 199 U. S. 414; *Hunt* v. *United States,* 257 U. S. 125. But the petition contains no allegation that it refused to perform this extra service, unless the Government would agree to pay additional compensation. The petition contains allegations apparently designed to show that objection to carrying the parcel post matter would have been largely futile; [3] but the allegations fall far short of showing a demand that the parcel post matter be eliminated, or a protest against carrying it under the conditions then existing. If the parcel post act, or other legislation, gives a right to compensation, the refusal or failure of the Postmaster General to allow the claim could not, of course, defeat recovery. Compare *Campbell* v. *United States,* 107 U. S. 407, 411;

---

[3] The petition alleges: "Much the larger part of the mails on petitioner's routes and on the routes of the other important railroad companies were carried in post office cars, for which cars arrangements were made between the Post Office Department and the railroad companies independent of the contracts for mail transportation, and, under such arrangements, such cars were in operation on petitioner's said routes at the time when the parcel post was established and at the times when the increases in weight of the parcel-post matter became effective. The greater part of the mails carried in such cars were loaded into and out of the same by contractors or other persons employed by the Post Office Department, over whom petitioner and the other railroad companies had no control, and the Postal Laws and Regulations (sec. 1583) forbade that railroad employees should enter the post office cars when in motion for any other purpose than the operation of the trains. Moreover, the parcel-post matter was so confused with the other mails that the employees of petitioner and the other railroad companies could not possibly have distinguished them, and removed them from the post office cars, if otherwise they had had opportunity."

*United States* v. *Knox,* 128 U. S. 230. But, unless there is such legislation, claimant cannot recover without showing a contract, express or implied in fact to pay the extra compensation. Compare *United States* v. *North American Transportation & Trading Co.,* 253 U. S. 330, 335; *Sutton* v. *United States,* 256 U. S. 575, 581. No basis for such a contract is afforded by the further allegation that when the Act of 1912 was passed, and when the parcel post system was established, railroads, high officials of the Post Office Department, and members of both houses of Congress, in charge of postal legislation, understood that Congress would provide additional compensation to the railroads.

The legislation makes no provision for additional compensation to the railroads for the period prior to July 1, 1913; and its history makes clear that Congress concluded not to allow any. For some time prior to the passage of the Act of August 24, 1912, there had been much discussion in Congress concerning the pay of railroads for carrying the mail. The carriers urged generally that the pay was inadequate; and there were proposals for increase of compensation. On the part of the public, there was a widespread belief that the railroads were overpaid; and there were proposals to reduce the compensation. When Congress passed the 1912 Act, it was not prepared to decide this controverted question. It, therefore, appointed a special committee to enquire into the subject, and also others, relating to parcel post, and directed the committee to report at the earliest date possible. Meanwhile, the discussion continued in Congress. That the parcel post would result in largely increased weight of mail was repeatedly asserted; but it was insisted that the pay under existing contracts would give the railroads even more compensation than they deserved. The fact was recognized that the appropriation bill enacted March 4, 1913, provided increased pay only for parcel post service ren-

dered after June 30, 1913.[4] The failure of Congress to make any provision for the preceding six.months was not inadvertent. It was the deliberate purpose of Congress nót to give the railroads additional pay for carrying the parcel post mail during that period.[5]

The case at bar is wholly unlike *Freund* v. *United States,* 260 U. S. 60; *United States* v. *Utah, Nevada & California Stage Co.,* 199 U. S. 414, and *Hunt* v. *United States,* 257 U. S. 125, on which claimant relies. In each of those cases there was ample power in the Postmaster General to pay the additional compensation claimed. In each the main question presented was whether under the proper construction of the contract claimant was entitled to additional pay. Moreover, in each, the contractor had by proper protest preserved his rights; and there was perhaps an element of duress. Here, as in *Sutton* v. *United States,* 256 U. S. 575, the Department had been denied power to pay an additional sum; there

---

[4] See Vol. 49, Cong. Rec., Part 5, 62nd Cong., 3rd sess., pp. 4459, 4461, 4684, 4686–4689, 4690, 4692, 4767, 4769, and particularly p. 4768:

" Mr. Moon of Tennessee (Manager on part of the House, submitting Conference Report). No; we do not add anything until after July, 1913.

" Mr. Murdock. That is my question—do we add 5 per cent after July, 1913?

" Mr. Moon. Yes; weighed before January 1."

[5] See Senate Report, Committee on Post Offices and Post Roads, July 23, 1912, No. 955, p. 25, 62nd Cong., 2nd sess.; Conference Report, August 23, 1912, H. R. No. 1242, 62nd Cong., 2nd sess.; Message of President, December 19, 1912, Sen. Doc. 989, p. 6, 62nd Cong., 3rd sess.; Senate Report, February 11 (17), 1913, No. 1212, pp. 2, 4, 62nd Cong., 3rd sess.; also Vol. 49, Cong. Rec., Part 2, 62nd Cong., 3rd sess., pp. 1409, 1411, 1412, 1466, 1476, 1506, 1509, 1511; Vol. 49, Cong. Rec., Part 4, 62nd Cong., 3rd sess., pp. 4012, 4013, 4014; Vol. 48, Cong. Rec., 62nd Cong., 2nd sess., Part 5, pp. 4675, 4989, 5068, 5075, 5227; Vol. 48, Cong. Rec., 62nd Cong., 2nd sess., Part 6, pp. 5439, 5473, 5504, 5649.

was no protest by the contractor against assuming the additional service; and there was no duress. The service was undertaken voluntarily; no doubt, in the expectation that Congress would provide additional compensation. It made some provision; but concluded not to make any for the first six months. We may not enquire into the reasons for this refusal, or undertake to revise its judgment. The obstacle to recovery is not strictly lack of jurisdiction in the Court of Claims. There was an express contract between the parties; there was also legislation; and on these the claim is founded. The obstacle to recovery is lack of legal merits. The Government did not in fact promise to pay for the extra service; nor did the legislation give to claimant a right to compensation. In other words, the petition fails to set out a cause of action.

*Affirmed.*