Janet UNDERWOOD, Next Friend of Wayne Buchanan Eads, Joe W. Underwood, David Wendelin, Mitch Marshall, Doug Coburn and John Breenan, Phyllis G. Bridgeman, Raeford Bland and Cindy Bland, Plaintiffs,

v.

The CITY COUNCIL OF GREENVILLE, NORTH CAROLINA, Frank Wooten, Mayor of Greenville, North Carolina, and Tommy Gladson, Acting Chief of Police of Greenville, North Carolina,

and

Eli Bloom, Solicitor, Third Judicial District, Defendants.

Civ. No. 703.

United States District Court,
E. D. North Carolina,
Washington Division.

Sept. 12, 1970.

Jerry Paul, Greenville, N. C., James E. Ferguson, II, of Chambers, Stein, Ferguson & Lanning, Charlotte, N. C., for plaintiffs.

David E. Reid, Jr., Greenville, N. C., for defendants.

## OPINION AND ORDER

LARKINS, District Judge.

This cause is before the court upon an application for preliminary injunction filed by plaintiffs in order to restrain the City Council for the City of Greenville, North Carolina and other named defendants from further alleged depriva-

tion of the plaintiffs' Constitutional rights in the following particulars:

(1) This is an action seeking to enjoin and declare the unconstitutionality of defendants' policy, practice, custom and usage of denying parade permits on vague and unsupported grounds and for reasons inconsistent with the Constitution of the United States and solely because of their station in life and political views; and,

(2) This action seeks to have Greenville City Ordinance No. 330 declared unconstitutional on its face and to enjoin and restrain the prosecution of twenty-seven members of the plaintiffs' class arrested December 4, 1969 by the City of Greenville police department under Greenville City Ordinance No. 330.

Jurisdiction in the court over this cause is grounded pursuant to the provisions of Title 28, United States Code Annotated, Section 1343 and Title 42, United States Code Annotated, Sections 1981, 1983 and 1988; said action being a class action filed pursuant to the provisions of Rule 23, Federal Rules of Civil Procedure seeking to enjoin the alleged deprivation of rights guaranteed by the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States, under color of State law.

Issues have been joined by the Defendant City Council's Answer and responses to motions.

## FINDINGS OF FACT

Plaintiffs all being members of the East Carolina University Vietnam Moratorium Committee, the action was originally commenced by the filing with this court of a Complaint and Motion for a Temporary Restraining Order on November 10, 1969, said plaintiffs having sought and been refused a permit to march from the East Carolina University campus to a point within the City of Greenville on October 15, 1969. The request for a parade permit was initially turned down by the City Council of the City of Greenville, North Carolina (hereinafter referred to as the "City Council"), upon its authority vested by the provisions of Greenville City Ordinance No. 226 (which was subsequently repealed upon the adoption of Greenville City Ordinance No. 330—the ordinance instantly under attack by plaintiffs), primarily because (1) the application had not been filed fifteen (15) or more days prior to the parade date, (2) objections voiced to the parade because of factors involving the time, the route, the fact that plaintiffs were not a governmental body, and lack of police protection.

Plaintiffs have alleged in their original and supplemental complaints that upon information and belief they were denied the permit because of their political views, mode of dress, life styles and because of the fear, without any legal probable cause, of what they might do or say, in violation of the plaintiffs' rights to equal protection of the laws. And in support of said allegation, plaintiffs cite the fact that a permit was granted to the East Carolina University Homecoming Parade on November 8, 1969, while conditions of time, police protection, route, et cetera were either similar or more hazardous than those factors as presented by plaintiffs in their request to march.

These assertions have been denied by the defendants.

Following the denial of plaintiffs' motion for a temporary restraining order by this court upon hearing, plaintiffs filed Notice of Appeal in the cause and on November 14, 1969, the Honorable J. Braxton Craven, United States Circuit Judge entered a Temporary Restraining Order allowing the plaintiffs to conduct a march on Saturday, November 15, 1969.

On Friday, November 14, 1969, the plaintiffs requested a permit to parade for Saturday, December 14, 1969 which was also denied by the City Council on November 17, 1969. On November 18,

1969, plaintiffs requested a permit to march on December 12, 1969, however the City Council having repealed the old Greenville City Ordinance No. 226 and having adopted to replace it the new ordinance, No. 330, this request was tabled upon the adoption of the new ordinance on December 3, 1969.

On December 4, 1969, twenty-seven or more individuals assembled on the mall at East Carolina University to discuss a silent vigil to be conducted at the Post Office in downtown Greenville, North Carolina, in order to protest the arrest, the night before, of two girls active in the anti-war movement on the grounds that they had illegally been placing posters announcing an upcoming rally in the Raleigh, North Carolina area at which one Dr. Ralph Abernathy was to be the featured speaker.

It was determined at the discussion meeting that the group should disperse and reassemble at the Post Office at approximately 4:00 p. m. that same day in order to conduct a silent protest vigil. It was further decided that "gags" would be worn over the mouths of those protesting, fashioned from white cloth, in order to demonstrate the real or imagined "gagging" of free speech for the students by the City Council.

The students were then given instructions and told to reassemble at the Post Office; to go separate ways if possible, walk in small groups, observe all laws, and to continue, single file and at some twenty (20) to twenty-five (25) feet apart. Not all of the protestors stayed in proper order as per the regulations established by protest marshals to stay in a single file and at least twenty (20) or twenty-five (25) (sic—conflicting distances in affidavits admitted upon motion of the plaintiffs) feet apart. And as the first of the group approached the intersection of Fifth Street and Evans Street and were met by police and a police bus parked in one of the streets, the order of march broke down as those in the rear areas of the "group" came on up to whet their curiosity as to what was transpiring.

Thereupon, twenty-seven (27) of the group were told to enter the police bus and were placed under arrest for violation of Greenville City Ordinance No. 330: "An Ordinance Regulating Parades, Picket Lines and Group Demonstrations in the City of Greenville, North Carolina"; to wit, marching or conducting a group demonstration without a permit.

A part of the relief sought by the plaintiffs herein is an injunction of the criminal proceedings against these twenty-seven individuals, on the grounds that the city ordinance under which they were accused is unconstitutional. However, the court finds that the criminal cases against all of these twenty-seven have been nol prossed by the defendant Eli Bloom and so this question is thereby mooted. See letter from Prosecutor Eli Bloom to this court dated September 9, 1970 and incorporated as a part of this opinion.

And so the primary question before the court is whether the present city ordinance for parades regulation within the city of Greenville, that being Greenville City Ordinance No. 330 as substituted by the court *Ex Mero Motu*, City Ordinance No. 226 having been repealed, is or is not valid constitutionally.

## CONCLUSIONS OF LAW

A hearing on plaintiffs' application for a Preliminary Injunction having been conducted by this court, In Chambers, Trenton, North Carolina on January 2, 1970, several motions have been taken under advisement by the court which will be ruled upon at this time.

The court having substituted the new ordinance, Greenville City Ordinance No. 330, for the old, No. 226, *Ex Mero Motu*, the oral motion of plaintiffs that they be allowed to amend the Complaint in order to allege that said Ordinance No. 330 was adopted unconstitutionally and not in conformance with the provisions of the North Carolina General Statutes should be allowed.

As the court reads the complaint, it is apparent that Paragraphs 7, 8, and 10 are relevant and material to the issues

at bar in that they build the complicated chain of events and alleged events which have brought this dispute into the jurisdiction of the court for a determination, and are necessary to be considered in making a fair judgment in the case at bar, and so defendants' motion to strike these paragraphs should be denied. However, the court is of the opinion that neither paragraph 15 nor 16 is relevant or material to the issue at bar and so the defendants' motion to strike as to these paragraphs should be allowed, and these paragraphs will not be considered by the court.

■ The court having further taken evidence from both plaintiffs and defendants in the form of oral arguments and the filing with the court of responses to motions and memorandums of law in support of and opposition to the Greenville City Ordinance No. 330, the court finds that the determination on the merits of the constitutional validity of said ordinance is hereby advanced and consolidated with the court's determination upon the application for preliminary injunctive relief as provided by Rule 65 (a) (2), Federal Rules of Civil Procedure. It is not necessary that a three-judge panel be convened in order to determine the constitutional merit of a municipal ordinance. Ex Parte Collins, 277 U.S. 565, 48 S.Ct. 585, 72 L.Ed. 990 (1928); United Steel Workers of America (A.F.L.–C.I.O.) v. Fuqua, 152 F.Supp. 591 (D.C.Ky., 1957).

Civil rights cases are especially suitable for simultaneous development by hearing on motion for preliminary injunction and on the merits at the same time. Singleton v. Anson County Board of Education, 387 F.2d 349 (4th Cir., 1967).

Coming then to the merits of the litigation at bar, the first question presented to the court for a determination thereof is whether or not City Ordinance No. 330 is void constitutionally for vagueness.

■ The standard to be followed in making this decision was enunciated in 1926 by the United States Supreme Court in Connally v. General Construction Co., 249 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926), wherein the Court said, "A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violate(s) the first essential of due process of law."

■ "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939).

■ "In regards to use of public streets and sidewalks, municipality may not empower its licensing officials to roam essentially at will, dispensing or withholding permission to speak, assemble, picket, or parade according to their own opinions regarding potential effect of the activity on welfare, decency, or morals of community." Shuttlesworth v. City of Birmingham, Ala., 394 U.S. 147, 153, 89 S.Ct. 935, 936, 22 L.Ed. 2d 162 (1969).

In the Shuttlesworth decision dealing with the question of parade permits, the court held that a "statute preventing serious interference with normal usage of streets and parks is valid, but licensing system which vests in an administrative official discretion to grant or withhold a permit upon broad criteria unrelated to proper regulation of public places is invalid." Shuttlesworth supra, at page 153, 89 S.Ct. at page 936. As counsel for the plaintiffs also point out in their memorandum in opposition to the ordinance here in question, in the Shuttlesworth decision, that court went to great lengths to stress the point that of course while some degree of regulation must exist in order to maintain the interests of the general convenience of the public over that of selected usage by a few individuals of public facilities, i. e. streets and parks, these regulations

may not be so broadly framed as to be tools for the denial of basic constitutional rights.

In Section 3(b) of the ordinance in question, the chief of police "or his designee" which means anybody the chief selects, may refuse to issue a permit to march, parade, assemble, picket or demonstrate in any way when and if he determines that said activity would either constitute a clear and present danger to the public health or safety or would "hinder or prevent the orderly movement of pedestrian or vehicular traffic on the streets, alleys, or sidewalks." Further the chief or his designee may specify whether or not minors will be allowed to participate, depending on, among several other reasons, whether he feels that to so participate would "interfere with their education."

(h) among other considerations, (the chief may) consider and find as a requisite to issuance the following:

(1) the activity will not require excessive diversion of police from other necessary duties;

(2) the activity will not interfere with the right of property owners in the area to enjoy peaceful and lawful occupancy and use of their property;

(3) the activity can be conducted without unreasonable interference with normal pedestrian or vehicular traffic in the area, and will not prevent normal police and fire protection to the public, and will not be likely to cause injury to persons or property or to provoke disorderly conduct or to create a public disturbance.

■ Clearly the municipal ordinance fails to give notice as to what exactly or what even might be considered by the governing bodies of the City of Greenville, North Carolina to be a gathering or assemblage or meeting or demonstration requiring the license of a special permit by that city. Clearly the broad language covering the discretion to be exercised by the chief of police or his designee fails to give notice as to what the guidelines are to be in deciding whether or not a requesting group should be entitled to a permit. Clearly, in fact, the chief is under no set of operational guidelines, but may rely entirely on his own discretion in determining who does and does not get requested permits. Clearly, the language of the ordinance is void for vagueness and thereby unconstitutional on its face.

## ORDER

Now therefore, in accordance with the foregoing, it is:

Ordered, that the defendants be and they are hereby permanently enjoined from imposing any sanction for any alleged violation of Greenville City Ordinance No. 330; and,

Further ordered, that the Defendants be and they are hereby permanently enjoined from allowing or refusing to allow any parade, march, picket, assemblage or gathering or demonstration under and pursuant to the provisions of said Greenville City Ordinance No. 330 which is hereby declared to be and it is unconstitutional on its face and void for vagueness; and

Further ordered, that Plaintiffs be and they are hereby allowed to amend their complaint in order to allege that said Ordinance No. 330 was adopted unconstitutionally and not in conformance with the provisions of the North Carolina General Statutes; and,

Further ordered, that the defendants' Motion to Strike Paragraphs 7, 8 and 10 of the Complaint as being irrelevant and immaterial is Denied; and that the Motion to Strike paragraphs 15 and 16 is hereby Allowed; and

Further ordered, that the Clerk shall serve copies of this opinion and order upon all Counsel of Record and upon the City Council of the City of Greenville, North Carolina.

Let this order be entered forthwith.

*Office of the District Prosecutor*

*Third Judicial District*

ELI BLOOM
CHIEF DISTRICT PROSECUTOR

TEL. 919 752-4901

GREENVILLE, NORTH CAROLINA

September 9, 1970

Honorable John Larkins
U. S. District Court Judge
Trenton, North Carolina

Re:  Janet E. Underwood Et Als

Dear Judge:

I have this day taken a nol pros in the above case, together with the 25 other defendants.

I hope to have the pleasure of seeing you in the near future. With kindest regards and best wishes, I am

Sincerely yours,

Eli Bloom
District Prosecutor

EB:joa